**FISHER & PHILLIPS LLP**
MARK J. RICCIARDI, ESQ.
Nevada Bar No. 3141
DAVID B. DORNAK, ESQ.
Nevada Bar No. 6274
300 South Fourth Street, Suite 1500
Las Vegas, NV 89101
Telephone: (702) 252-3131
E-Mail: mricciardi@fisherphillips.com; ddornak@fisherphillips.com

J. RANDALL COFFEY, ESQ.
Missouri Bar No. 35070 (*Admitted Pro Hac Vice*)
4622 Pennsylvania Avenue, Suite 910
Kansas City, MO 64112
Telephone: 816-842-8770
Email: rcoffey@fisherphillips.com

BARBARA JEAN D'AQUILA, ESQ.
Minnesota Bar No. 002112X (*Admitted Pro Hac Vice*)
225 South 6th, Suite 3900
Minneapolis, MN 55402
Telephone: 612-999-7883
Email: bdaquila@fisherphillips.com
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| **RED ROCK RESORTS, INC., et al.,** | ) Case No.: 2:24-cv-01966-JCM-BNW |
| | ) |
| **Plaintiffs,** | ) **REPLY TO DEFENDANTS'** |
| **v.** | ) **OPPOSITION TO PLAINTIFFS'** |
| | ) **MOTION FOR PRELIMINARY** |
| **NATIONAL LABOR RELATIONS** | ) **INJUNCTION** |
| **BOARD, a federal administrative agency,** | ) |
| **et al.,** | ) **ORAL ARGUMENT REQUESTED** |
| | ) |
| **Defendants.** | ) |
| | ) |

1

## <u>TABLE OF CONTENTS</u>

2
**MEMORANDUM OF POINTS AND AUTHORITIES** ....................................1

3
**I. INTRODUCTION** ......................................................................................1

4
**II. STANDARD OF REVIEW** ..........................................................................4

5

6
**III. LEGAL ARGUMENT** .................................................................................5

7
    **A.**   Red Herring: The NLGA ...................................................................5

8
    **B.**   Likelihood Of Success On The Merits .................................................7

9
        **1.**   **The Unconstitutional NLRB Board** .........................................7

10
        **2.**   **The Unconstitutional ALJ** ....................................................10

11
        **3.**   **The Unconstitutional Violation Of The Fifth Amendment** ................16

12
        **4.**   **The Unconstitutional Violation Of Plaintiffs' Jury-Trial Rights**................19

13
    **C.**   **Irreparable Harm** .............................................................................**21**

14
    **D.**   **Balance Of Equities And Public Interest** .................................. **24**

15

16
**IV.  CONCLUSION**…………………………………………………**25**

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alivio Med. Ctr. v. NLRB,*
   No. 24-cv-7217, 2024 WL 4188068 (N.D. Ill. Sept. 13, 2024)..........................15

*Alliance for the Wild Rockies v. Cottrell,*
   632 F.3d 1127 (9th Cir. 2011) ...........................................................................4

*Am. Beverage Ass'n v. City & Cnty. of San Francisco,*
   916 F.3d 749 (9th Cir. 2019) (*en banc*) ...........................................................4

*Arc of Cal. v. Douglas,*
   757 F.3d 975 (9th Cir. 2014) ............................................................................23

*Arizona Dream Act Coal. v. Brewer,*
   757 F.3d 1053 (9th Cir. 2014) ..........................................................................25

*Arizona Dream Act Coal. v. Brewer,*
   855 F.3d 957 (9th Cir. 2017) .............................................................................4

*Armstrong v. Exceptional Child Ctr., Inc.,*
   575 U.S. 320 (2015) ...........................................................................................5

*Axon Enter., Inc. v. Fed. Trade Comm'n,*
   598 U.S. 175 (2023) ................................................................................ *passim*

*Baird v. Bonta,*
   81 F.4th 1036 (9th Cir. 2023) ................................................................. *passim*

*Barr v. Am. Ass'n of Pol. Consultants, Inc.,*
   591 U.S. 610 (2020)..........................................................................................23

Br. for Samuel F. Rathbun, Ex'r at 46 & n.21 ........................................................7

*Brown v. Plata,*
   563 U.S. 493 (2011).............................................................................................5

*In re Clean Water Act Rulemaking,*
   60 F.4th 583 (9th Cir. 2023) ..............................................................................5

*Coeur D'Alene Tribe v. Hammond,*
   224 F. Supp. 2d 1264 (D. Idaho 2002) .............................................................23

*Collins v. Yellen,*
   594 U.S. 220 (2021)...........................................................................8, 11, 12, 13

FP 53602661.1

*Consumers' Rsch. v. Consumer Prod. Safety Comm'n,*
  91 F.4th 342 (5th Cir. 2024) (Jones, J., concurring and dissenting in part)........................7

*Cuviello v. City of Vallejo,*
  944 F.3d 816 (9th Cir. 2019) .......................................................................22, 23

*Decker Coal Co. v. Pehringer,*
  8 F.4th 1123 (9th Cir. 2021) ...............................................................13, 14, 15

*Del. State Sportsmen's Assoc. v. Del. Dept. of Safety & Homeland Security,*
  108 F.4th 194 (3d Cir. 2024) ...................................................................24, 25

*Energy Transfer, LP v. Nat'l Lab. Rels. Bd.,*
  No. 3:24-CV-198, 2024 WL 3571494 (S.D. Tex. July 29, 2024) ....................................16

*Fight for Nev. v. Cegavske,*
  460 F. Supp. 3d 1049 (D. Nev. 2020) ..................................................................23

*Fleming v. United States Dep't of Agric.,*
  987 F.3d 1093 (D.C. Cir. 2021) (Rao, J., concurring and dissenting in part)...................12

*Free Enter. Fund v. Public Company Accounting Oversight Bd.,*
  561 U.S. 477 (2010)by removing them from office") ............................................... *passim*

*Gelbard v. United States,*
  408 U.S. 41 (1972)....................................................................................24

*Greenway v. Schriro,*
  653 F.3d (9th Cir. 2011) .............................................................................18

*Hernandez v. Sessions,*
  872 F.3d 976 (9th Cir. 2017) ..........................................................................4

*Horne v. Polk,*
  242 Ariz. 226 (2017)..................................................................................19

*Humphrey's Executor,*
  295 U.S. 602 (1935)......................................................................... 7, 8, 9, 10

*Hutto v. Finney,*
  437 U.S. 678 (1978)..................................................................................4, 25

*Hybritech Inc. v. Abbott Labs.,*
  849 F.2d 1446 (Fed. Cir. 1988)........................................................................22

*Int'l Union of Operating Eng'rs, Stationary Eng'rs v. NLRB,*
  No. 23-124, 2025 WL 251692 (9th Cir. Jan. 21, 2025)......................................19, 20, 21

iii

*Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n.,*
    457 U.S. 702 (1982)..................................................................................................6, 7

*Johnson v. Zerbst,*
    304 U.S. 458 (1938)......................................................................................................22

*Johnston v. Colbert,*
    No. CV-22-0260, 2023 WL 9510557 (D. Ariz. Aug. 15, 2023)........................................5

*Leachco, Inc. v. Consumer Product Safety Comm'n,*
    103 F.4th 748 (10th Cir. 2024) ....................................................................................15

*Lindahl v. Office of Personnel Management,*
    470 U.S. 768 (1985)........................................................................................................5

*Loper Bright Enter. v. Raimondo,*
    144 S. Ct. 224 (2024)....................................................................................................15

*Lucia v. Sec. & Exch. Comm'n,*
    585 U.S. 237 (2018)................................................................................................11, 13

*Marbury v. Madison,*
    1 Cranch 137 (1803) ....................................................................................................25

*Melendres v. Arpaio,*
    695 F.3d 990 (9th Cir. 2012) ........................................................................................4

*Mertens v. Hewitt Assocs.,*
    508 U.S. 248 (1993)......................................................................................................20

*Morgan Keegan & Co. v. McPoland,*
    829 F. Supp. 2d 1031 (W.D. Wash. 2011) (Circuit Court citation omitted)....................24

*Morrison v. Olson,*
    487 US. 654 (1988)......................................................................................................15

*In re Murchison,*
    349 U.S. 133 (1955)......................................................................................................19

*Myers v. United States,*
    272 U.S. 52 (1926)............................................................................................ *passim*

*Aguayo ex rel. N.L.R.B. v. Tomco Carburetor Co.,*
    853 F.2d 744 (9th Cir. 1988) ......................................................................................23

*Nexstar Media, Inc. Grp. v. NLRB* ..................................................................................6

*NLRB v. Aakash, Inc.,*
    58 F.4th 1099 (9th Cir. 2023) ........................................................................................1

iv

*NLRB v. Jones & Laughlin Steel Corp.*,
    301 U.S. 1 (1937)...................................................................................20, 21

*Oakland Tribune, Inc. v. Chronicle Publishing Co.*,
    762 F.2d 1374 (9th Cir. 1985) ..........................................................................23

*Oppenheimer & Co., v. Mitchell*,
    C23-67..............................................................................................................24

*PHH Corp. v. Consumer Fin. Prot. Bureau*,
    881 F.3d 75 (D.C. Cir. 2018) (Kavanaugh, J., dissenting) ...............................12

*Powers and Duties of the Fed. Trade Comm'n in the Conduct of Investigations*,
    34 Op. Att'y Gen. 553 (1925)..............................................................................8

*Rabadi v. US DEA*,
    122 F.4th 371 (9th Cir. 2024) ...........................................................................15

*Reuter v. Skipper*,
    4 F.3d 716 (9th Cir. 1993) ..................................................................................7

*Rodriguez v. Robbins*,
    715 F.3d 1127 (9th Cir. 2013) ...........................................................................25

*Roman v. Wolf*,
    977 F.3d 935 (9th Cir. 2020) .............................................................................25

*Sec. & Exch. Comm'n v. Jarkesy*,
    603 U.S. 109 (2024)................................................................................. *passim*

*Sec'y of Educ. Review of ALJ Decisions*,
    15 Op. O.L.C. 8 (1991).....................................................................................11

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
    591 U.S. 197 (2020) (Roberts,C.J.) ........................................................ *passim*

*SI Handling Systems, Inc. v. Heisley*,
    753 F.2d 1244 (3d Cir.1985)............................................................................23

*SpaceX v. Nat'l Lab. Rels. Bd.*,
    No. W-24-CV-00203-ADA, 2024 WL 3512082 (W.D. Tex. July 23, 2024).............16, 23

*Staacke v. Sec'y of Labor*,
    841 F.2d 278 (9th Cir. 1988) ..............................................................................5

*State v. Su*,
    121 F.4th 1 (9th Cir. 2024) (Nelson, J., concurring) ........................................13

FP 53602661.1

*Stern v. Marshall,*
   564 U.S. 462 (2011) ...................................................................................21

*Thryv,*
   372 NLRB No. 22 .......................................................................................21

*Thryv, Inc. v. Nat'l Lab. Rels. Bd.,*
   102 F.4th 727 (5th Cir. 2024) ...............................................................21, 22

*Trump v. U.S.,*
   603 U.S. 593 (2024) .................................................................................2, 12

*U.S. v. Arthrex,*
   141 S. Ct. 1970 (2021) .......................................................................8, 10, 13

*United States v. Nixon,*
   418 U.S. 683 (1974) ....................................................................................12

*Vanderbilt Univ. v. Nat'l Lab. Rels. Bd.,*
   No. 3:24-CV-01301, 2024 WL 5109420 (M.D. Tenn. Dec. 12, 2024) ...........6

*Winter v. Nat. Res. Def. Council, Inc.,*
   555 U.S. 7 (2008) .......................................................................................3, 4

*Yapp USA Auto. Sys., Inc. v. NLRB,*
   No. 24-12173, 2024 WL 4119058 (E.D. Mich. Sept. 9, 2024) .....................15

*Zepeda v. U.S. I.N.S.,*
   753 F.2d 719 (9th Cir. 1983) .......................................................................25

**Statutes**

5 U.S.C. § 632 (1946) ........................................................................................14

5 U.S.C. § 1202 (d) ........................................................................................1, 14

5 U.S.C. § 7521(a) .......................................................................................14, 15

28 U.S.C. § 1331 ......................................................................................3, 5, 16

29 U.S.C. § 104(a)-(i) .........................................................................................6

29 U.S.C. § 107 ..................................................................................................5

29 U.S.C. § 113(a) ..............................................................................................5

29 U.S.C. § 113(b) ..............................................................................................6

29 U.S.C. § 153(a) ............................................................................................10

29 U.S.C. § 153(d) ..................................................................................................19

29 U.S.C. § 154 ..................................................................................................8, 19

29 U.S.C. §§ 154-160 ..............................................................................................8

29 U.S.C. § 155 ........................................................................................................8

Pub. L. No. 75-447, § 4, 52 Stat. 111, 115 (1938) ..................................................8

Pub. L. No. 93-153, § 408(f), 87 Stat. 576, 592 (1973) ..........................................8

**Other Authorities**

Const., Seventh Amend. ..........................................................................................19

Const. Art II, § 3 ...............................................................................................1, 14

Hearings on H.R. 11280 Before H. Comm. on Post Off. & Civ. Serv., 95th Cong. 824 (1978) ..................................................................................................................... 14

vii

**MEMORANDUM OF POINTS AND AUTHORITIES**[1]

## I.    INTRODUCTION

Defendants fall far short of refuting Plaintiffs' constitutional claims. They mischaracterize or disregard controlling law, raise red herrings, and present straw-man arguments having no legal impact. Importantly, they totally ignore the fundamental constitutional flaw in the entire structure at issue here. Undeniably, the President is responsible for enforcing the NLRA, but the only NLRB officer for whom the President has unfettered removal power is the NLRB General Counsel ("GC") (as Defendants acknowledge [ECF No. 20, p. 10, n.2]). But, as shown below, the GC has *no* removal power over the NLRB Board Members, the ALJs, or the Merit Systems Protection Board ("MSPB") Members. Thus, given this structure, the President is unconstitutionally precluded from exercising his Article II removal powers under the "Vesting" or "Take Care" Clause.[2] This situation proves the constitutional defect in a nutshell.

Fatally—but as they must—Defendants admit the salient constitutional infirmities regarding removal restrictions when they concede Board Members may only be removed for "neglect of duty or malfeasance" and ALJs "only for good cause established by the [MSPB]"[3] in a "two-step process" initiated by the Board. [ECF No. 20, pp. 12-13]. Defendants further confess these constitutional deficiencies by proclaiming "Board Members, ALJs, and MSPB [M]embers are protected from at will removal." [*Id.*]. Here, one layer of removal protection violates the Constitution, and, independently and collectively, multiple layers unequivocally seal the unconstitutional statutory fate, compelling the granting of Plaintiffs' motion.

The Constitution is clear: The President "shall take Care that the Laws be faithfully executed, and shall Commission all the Officers of the United States." Const. Art II, § 3. He executes the laws with the help of "Officers" he appoints. How could he discharge his constitutional obligations if his commissioning power and the requirement to ensure faithful

---

[1]Plaintiffs reserve their reply right regarding the union brief if allowed to be filed by the Court.
[2]Plenary GC removal power exists. *NLRB v. Aakash, Inc.*, 58 F.4th 1099, 1103-06 (9th Cir. 2023).
[3]Adding a third-layer to the constitutionality infirmity, the President can remove MSPB Members "only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202 (d).

FP 53602661.1

execution of the Laws were not absolute regarding the Officers who substantively conduct his Executive duties? If the people whom he entrusted to execute his Executive Powers did not serve at his pleasure? The constitutional requirements would be hollow or non-existent.

As the Supreme Court has decreed more than once, "Congress lacks authority to control the President's unrestricted power of removal[.]" *See, e.g., Trump v. U.S.*, 603 U.S. 593, 608-09 (2024) (quotations omitted). Indeed, "[t]he President's power to remove—and thus supervise— those who wield executive power on his behalf follows from the text of Article II" was well-settled by the First Congress *in 1789*, confirmed in the *1926* landmark decision, *Myers v. United States*, 272 U.S. 52 (1926), and reaffirmed in subsequent, controlling Supreme Court caselaw. *See, e.g., Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 204 (2020) (Roberts, C.J.) (discussing removal requirement and centuries-old history); *Free Enter. Fund v. Public Company Accounting Oversight Bd.,* 561 U.S. 477, 483 (2010) ("Since 1789, the Constitution has . . . empower[ed] the President to keep these officers accountable—by removing them from office"). *Only two* exceedingly-rare exceptions ("the outermost constitutional limits") to the President's "unrestricted removal power" exist: (1) when a multimember-expert-agency officer does "not wield substantial executive power;" or (2) when the individual[4] has "limited duties and no policymaking or administrative authority." *Seila Law*, 591 U.S. at 218 (citation omitted). Despite Defendants' improper reliance on *Humphrey's Executor* and other caselaw, the rare exceptions reiterated in *Seila Law* do *not* exist and *Humphrey's Executor* does *not* apply here. As demonstrated below, the NLRB Board exercises substantial Executive Power, and the ALJs have

---

[4]Although *Seila Law* stated the exception as involving "inferior" officers, *Free Enter. Fund* explained removal restrictions on any U.S. "Officers" (*i.e.*, inferior or principal) require constitutional scrutiny. 561 U.S. at 506. "Officers" (as used in the Constitution) typically "exercise significant authority" vs. low-level "functionaries" with civil-service protections who may remain free from unrestricted removal. *Id.* (quotations omitted). This distinction pans out as such mere employees would have "limited duties" with "no policymaking or administrative authority." *Seila Law*, 591 U.S. at 218. Conceding ALJs are inferior, Defendants ignore the greater power and authority they exercise, as compared to civil-service functionaries.

1  sample duties including policymaking and administrative authority. This ends the inquiry. Neither

2  exception exists here.

3      Applying Supreme Court precedent, and as shown below, the other arguments Defendants

4  raise are likewise unpersuasive and even puzzling. Tellingly, Defendants' legal analysis begins

5  with the spurious contention the Norris-LaGuardia Act (NLGA) bars Plaintiffs' suit. It does no

6  such thing. This Court has a duty to enjoin constitutional violations, as even Defendants' authority

7  states. Defendants' expansive argument that this Court has no subject-matter-jurisdiction under

8  28 U.S.C. § 1331 also fares no better, as the Supreme Court undeniably found "being subjected

9  to an illegitimate proceeding, led by an illegitimate decisionmaker" qualifies as a "here-and-now

10 injury." *Axon Enter., Inc. v. Fed. Trade Comm'n,* 598 U.S. 175, 191 (2023). "[I]t is impossible to

11 remedy" the injury after the agency proceeding ends and appellate review begins. *Id.* The

12 appellate court "can do nothing: A proceeding that has already happened cannot be undone." *Id.*

13 But this Court plainly has the power under Section 1331 to address the constitutional claims now.

14     Defendants' arguments regarding the remaining issues, *i.e.*, due process (Count III), jury-

15 trial rights (Count IV), and the other injunction factors, likewise lack merit.[5] Presently suffering

16 an unconstitutional proceeding in and of itself establishes irreparable harm, *Axon,* 598 U.S. at

17 191, and the equities and public-interest factors are established with a showing of at least one

18 constitutional violation. *See Baird v. Bonta,* 81 F.4th 1036, 1040-41 (9th Cir. 2023) (*citing Winter*

19 *v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)) (constitutional violations usually establish

20 irreparable harm; equities and public-interest factors "merge" with government as preventing

21 constitutional violation is "always" in public interest).

22     At bottom, each of the identified violations—*individually and collectively*—compel this

23 Court to grant the requested relief now. In short, if there is *even one single constitutional violation*,

24 which respectfully this Court is legally compelled to find and then some, an injunction must issue.

25

26

27 ---
[5] For example, the Seventh Amendment mandates a jury-trial for the non-equitable relief sought here. *See generally Sec. & Exch. Comm'n v. Jarkesy*, 603 U.S. 109 (2024) (discussing concept).

28

1    **II.    STANDARD OF REVIEW**

2    Defendants wrongly claim Plaintiffs "forfeited" the Ninth Circuit's "sliding scale"

3    injunction test. Not so.[6] Plaintiffs cited *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127,

4    1131 (9th Cir. 2011) (equal weight not required; "stronger showing" of one factor may offset

5    "weaker showing of another") and provided relevant analysis. Plaintiffs' likely merits-success

6    supplies the dispositive factor. If even one constitutional claim will likely succeed, Plaintiffs

7    satisfy the *Winter* factors because a "deprivation of constitutional rights 'unquestionably

8    constitutes irreparable injury'" and the remaining factors "merge" with a nonmovant government.

9    *See Baird*, 81 F.4th at 1040 (merger); *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017)

10    (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)) (deprivation; injunction

11    always in public interest with likely constitutional harm; "all citizens" have "stake in upholding

12    the Constitution"); *Arizona Dream Act Coal. v. Brewer*, 855 F.3d 957, 978 (9th Cir. 2017)

13    (cleaned up) ("public interest and the balance of the equities favor preventing [constitutional]

14    violation"). Plaintiffs also suffer increasing irreparable harm from the ongoing maintenance of

15    unconstitutional enforcement proceedings with an illegitimate ALJ and Board. Indeed, Plaintiffs

16    face a lower burden, as "prevent[ing] future constitutional violations" is "a classic form of

17    prohibitory injunction." *See Hernandez*, 872 F.3d at 998 (less is required). And, upon a showing

18    of a likely constitutional violation, a district court's "equitable powers to remedy past wrongs is

19    broad, for breadth and flexibility are inherent in equitable remedies." *Hutto v. Finney*, 437 U.S.

20    678, 688 n.9 (1978) (citation omitted). Entirely appropriately, courts should "bring an ongoing

21    violation to an immediate halt." *Id.* This Court "may not deny a preliminary injunction  motion

22

23    [6]Plaintiffs satisfied all the factors. But, due to Plaintiffs' claims' constitutional nature and relevant caselaw, only likely success matters. *Baird*, 81 F.4th at 1040. A party cannot "forfeit" the correct

24    legal standard. *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 754 (9th Cir. 2019) (*en banc*) (discretion abused if wrong standard used). Albeit that the movant must establish:

25    1) likely merits-success; 2) irreparable harm absent relief; 3) equities tipping in the movant's favor; and 4) service of the public interest, *Winter*, 555 U.S. at 20, "the first factor is especially

26    important" for a constitutional violation. *Baird*, 81 F.4th at 1040. Showing that usually confirms irreparable harm and "sharply tilts" the equities and public-interest factors in the movant's favor.

27    *Id.*; *see Alliance for the Wild Rockies*, 632 F.3d at 1135 (must apply sliding-scale post-*Winter*).

28

FP 53602661.1

1  and thereby 'allow constitutional violations to continue simply because a remedy would

2  involve intrusion into' an agency's administration[.]" *Baird*, 81 F.4th at 1041 (quoting *Brown v.*

3  *Plata*, 563 U.S. 493, 511 (2011)).

4  **III.    LEGAL ARGUMENT**

5          Nothing Defendants advance changes the legally-mandated outcome. The constitutionally

6  flawed agency structure and proceedings deprive Plaintiffs of their constitutional rights. Period.

7  The harmful irremediable effects will continue absent relief. Article II, the Fifth Amendment, and

8  the Seventh Amendment, individually and collectively, compel action.

9          **A.    Red Herring: The NLGA**

10         Defendants expose their insurmountable weaknesses by starting with a *red herring*,

11 misleadingly arguing the NLGA jurisdictionally bars "injunctive relief in labor-dispute cases."

12 This suit does not seek injunctive relief for a "labor dispute," as Defendants disingenuously

13 contend. And, it is inconceivable Defendants controvert the right to constitutionally challenge the

14 statutory structure, proceedings, and execution of Presidential powers. On the contrary, federal

15 district courts have the power to "enjoin unconstitutional actions" by federal officers. *In re Clean*

16 *Water Act Rulemaking,* 60 F.4th 583, 594 (9th Cir. 2023) (quoting *Armstrong v. Exceptional Child*

17 *Ctr., Inc.*, 575 U.S. 320, 327 (2015)); 28 U.S.C. § 1331. Even where a statute bars judicial review,

18 federal courts can *always* examine constitutional claims. *Staacke v. Sec'y of Labor*, 841 F.2d 278,

19 281 (9th Cir. 1988).[7]

20         Notwithstanding controlling legal authority, Defendants argue this suit "grow[s] out of a

21 labor dispute." 29 U.S.C. § 107. Absurd. The NLGA labor dispute must be between employees

22 and the employer, employees and a union, or a union and the employer, 29 U.S.C. § 113(a), and

---

24 [7]To strip judicial jurisdiction, Congress must use "unambiguous and comprehensive language."
   *Staacke*, 841 F.2d at 281 (quoting *Lindahl v. Office of Personnel Management*, 470 U.S. 768,
25 779-80 n. 13 (1985)). No statute precludes district court injunctions of unconstitutional agency
   actions (which, if done, would also be unconstitutional). Rather, Congress expressly granted
26 "original jurisdiction" over constitutional suits. 28 U.S.C. § 1331; *Johnston v. Colbert*, No. CV-
   22-0260, 2023 WL 9510557, at *7 (D. Ariz. Aug. 15, 2023) (citations omitted) (such jurisdiction
27 always retained even where review otherwise foreclosed).

5

1    the "controversy" must concern employment "terms or conditions" or "the association or

2    representation of persons" addressing such, 29 U.S.C. § 113(b). Congress further limited the

3    NLGA by enumerating specific acts barring injunctive relief. *See* 29 U.S.C. § 104(a)-(i) (listing

4    barred conduct). Yet, Defendants never articulate any enumerated act. Why? Because Plaintiffs

5    made no such request, but rather bring structural constitutional claims. And, the NLGA does not

6    prohibit "injunctions against a labor agency" over "its own regulations." *Vanderbilt Univ. v. Nat'l*

7    *Lab. Rels. Bd.*, No. 3:24-CV-01301, 2024 WL 5109420, at *15 (M.D. Tenn. Dec. 12, 2024).

8         Even Defendants' leading authority confirms that the NLGA only applies when "the

9    employer-employee relationship" is "the matrix of the controversy." *Jacksonville Bulk Terminals,*

10   *Inc. v. Int'l Longshoremen's Ass'n.*, 457 U.S. 702, 712-13 (1982) (applying NLGA to dispute

11   concerning contract interpretation).[8] This controversy's "matrix" involves no such relationship—

12   Plaintiffs neither seek findings about "terms or conditions of employment" nor a merits review of

13   the underlying ULP charges. In fact, Plaintiffs never named a union or any employee as a

14   defendant, much less sought to enjoin them. Instead, this controversy involves whether the

15   structure and proceedings comport with the Constitution. It presents an original-jurisdiction

16   question this Court must and can resolve without wading into collateral disputes involving unions

17   or employees. Indeed, two years ago, the Supreme Court reaffirmed that a statutory review

18   scheme "does not preclude" a district court's consideration of constitutional challenges to an

19   agency's structure. *Axon*, 598 U.S. at 180. Here, just like *Axon*, Plaintiffs are parties "in an

20   administrative enforcement action," "sued in district court" before an ALJ decision, seek "to

21   enjoin the proceeding[s]," bring claims the "structure violates the Constitution," and contend the

22   "illegitimate proceeding causes legal injury." *Id.* at 182.

23         Critically, *Axon* held federal district courts *must* exercise jurisdiction over the sort of

24   constitutional claims here. *See id.* (cognizable injury independent of ALJ rulings). This suit's

25   ─────────────────

26   [8]Defendants rely heavily on bald-faced *dicta* (that has no legal analysis) in *Nexstar Media, Inc.*
     *Grp. v. NLRB,* an out-of-circuit decision lacking persuasive value, because there, the district

27   court expressly declined to consider the NLGA, having found a lack of subject-matter jurisdiction on
     other grounds. No. 4:24-CV-01415, 2024 WL 4127090, at *5 (N.D. Ohio Aug. 26, 2024).

28

FP 53602661.1

"matrix of the controversy," where Plaintiffs seek to redress constitutional injuries independent of the "labor dispute," stands far removed from an NLGA dispute about "the employer-employee relationship." *See Jacksonville Bulk Terminals*, 457 U.S. at 712 (discussing "labor dispute"). "It would be incongruous" to hold the NLGA precludes "equitable relief" for the "injured party['s] constitutional claims because the parties also have "a labor dispute." *Reuter v. Skipper*, 4 F.3d 716, 720 (9th Cir. 1993) (NLGA does not prevent suit on a meritorious constitutional claim).

"Why would Defendants lead with such a red herring?" Scrutiny of Defendants' opposition reaffirms the answer: *because there is no there there anywhere*.[9] Plaintiffs rightfully raise constitutional challenges here.

## B. Likelihood Of Success On The Merits

Plaintiffs will likely succeed on one and indeed all claims, which, individually and collectively, mandate a likelihood-of-success finding, satisfying this dispositive factor.

### 1. The Unconstitutional NLRB Board

Defendants' argument regarding Board removal protections hinges entirely on an ill-conceived misperception of *Humphrey's Executor.* As the Supreme Court recently highlighted, the circumscribed *Humphrey's Executor* removal exception (which related to the-then FTC)[10] applies only to: (1) "a multimember body of experts;" (2) "balanced along partisan lines;" (3) "that perform[s] legislative and judicial functions;" and (4) that is "said not to exercise any executive power." *Seila Law*, 591 U.S. at 216.[11] Given an agency must meet all four narrowly-

---

[9] With good reason, Plaintiff entreated this Court "not to be *distracted* by extraneous facts and inapplicable law that Defendants will no doubt raise[.]" [ECF No. 13, p. 15] (emphasis in original).

[10] The 1935 FTC spent over 40% of its budget investigating as "an agent of Congress." Br. for Samuel F. Rathbun, Ex'r at 46 & n.21, *Humphrey's Executor*, 295 U.S. 602 (1935). Relying on such peculiar facts, the Court said the then-FTC was created "to carry into effect legislative policies" and perform as a "legislative or as a judicial aid," *Humphrey's Executor*, 295 U.S. at 627-28, only exercising "executive function" (vs. Executive Power) in the discharge of its "quasi" legislative or judicial powers." *Id.* Thus, the Court held the FTC "must be free from executive control." *Id.* at 631 ("character" of office makes a difference).

[11] A "multimember structure alone" cannot permit "for-cause removal[,]" as *Humphrey's Executor* also requires no exercise of Executive Power. *Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 91 F.4th 342, 358 (5th Cir. 2024) (Jones, J., concurring and dissenting in part).

FP 53602661.1

construed requirements, it comes as no surprise that, at least in the last 15 years, the Supreme Court has consistently declined to extend this exception to modern agencies with Executive Power and policymaking and administrative authority.[12] *See Free Enter. Fund*, 561 U.S. 477 (unconstitutional PCAOB members); *Seila Law*, 591 U.S. 197 (unconstitutional CFPB Director); *Collins v. Yellen*, 594 U.S. 220 (2021) (unconstitutional FHFA Director); *U.S. v. Arthrex*, 141 S. Ct. 1970 (2021) (unconstitutional PTAB Administrative Patent Judges, unless subject to supervision by President or principal officer). Through these cases, the Supreme Court has confirmed that the antiquated *Humphrey's Executor* exception only applied because "the Court viewed the FTC (as it existed in 1935) as exercising 'no part of the executive power.'" *Seila Law*, 591 U.S. at 215. Effectively, *Humphrey's Executor* is limited to its odd facts and never applies unless a meaningful resemblance exists to the "quasi-legislative and quasi-judicial" 1935 FTC having zero executive authority.[13] In other words, it is inapposite here. Today's NLRB finds no analogue in the 1935 FTC. The 1935 FTC had no litigation power, no ability to directly execute its orders, and no rulemaking authority.[14] In sharp contrast, the NLRB exercises Executive Power:

● The Board enforces the NLRA by: (a) determining collective bargaining units; (b) investigating petitions and providing hearings; (c) directing representation elections and certifying results; (d) generally, deciding whether to cede jurisdiction to another agency; (e) issuing and serving ULP complaints; (f) ultimately deciding the fate of ULPs; (g) seeking court enforcement of ULP orders; (h) appointing inferior officers (*e.g.*, executive secretary, attorneys, examiners, regional directors); (i) issuing subpoenas, copying evidence, and embarking on other activity to oversee elections and prevent ULPs; (j) promulgating rules and regulations; and (k) seeking injunctive relief before the district court. 29 U.S.C. §§ 154-160.

● Only the Board (or an assistant) may review ALJ reports. 29 U.S.C. § 154.

● The Board may create or use regional, local, or other agencies. 29 U.S.C. § 154.

● The Board may "prosecute an inquiry" and any participating member may also subsequently participate in a Board decision in the same case. 29 U.S.C. § 155.

---

[12]Modern agencies like the NLRB exercise Executive Power far beyond the then-FTC ("likened" to a congressional committee). *Powers and Duties of the Fed. Trade Comm'n in the Conduct of Investigations*, 34 Op. Att'y Gen. 553, 557-58 (1925) ("main purpose" is reporting to Congress).
[13]If the Court were to view *Humphrey's Executor* as providing any broader limitations on the President's removal authority, Plaintiffs reserve their right to argue it should be overruled.
[14]Congress later enacted laws allowing the FTC to bring actions in federal court. *See* Pub. L. No. 75-447, § 4, 52 Stat. 111, 115 (1938); Pub. L. No. 93-153, § 408(f), 87 Stat. 576, 592 (1973).

8

The above list confirms that "substantial executive power" with administrative, policymaking, and prosecutorial authority exists in the NLRB Board. Any contrary conclusion denies reality.

Defendants contend the Board's for-cause removal protection does not violate the Constitution because *Humphrey's Executor* requires only a "multi-member decisionmaking body of experts" not "subject to complete change at any one time."[15] They ignore and reject the substantial-executive-power requirement and erroneously contend Plaintiffs are implicitly asserting *Seila Law* "radically and sub silentio upended decades of precedent" and supplanted *Humphrey's Executor* "with a new legal rule allowing principal officers on multi-member boards" "to receive removal protections only if they do not exercise 'substantial executive power.'" Dead wrong. *Humphrey's Executor* itself *expressly* addressed that the "character" of the office drives the result and imposed the multi-part conditions (stated above) requiring, *inter alia*, limited duties and no exercise of executive power but rather "predominantly" "quasi-legislative and quasi-judicial power." *Humphrey's Executor*, 295 U.S. at 624, 631. The Court instructed the FTC was "wholly disconnected from the executive department" and distinguished "executive function" merely to discharge legislative and judicial powers from real Executive Power. *Id.* at 627-30; *Seila Law*, 591 U.S. at 215-17.[16] In other words, *Seila Law* recognized *Humphrey's Executor's* limited application only for an agency body that, *inter alia*, never exercises "any executive power." *Id.* at 216.[17] The Court described this rare exception as an "outermost limit." *Id.* at 218.

---

[15]If permissible-removal protection only needed a multi-member, staggered-term board and nothing more, the Constitution would be hollow. The branch's constitutional power is controlling. The President needs complete control over officers predominantly executing his Powers.

[16]*Humphrey's Executor* noted the *Myers* postmaster was "an executive officer" restricted to performing "executive functions[.]" 295 U.S. 602, 627-30 (never occupied any "place in the executive department" nor exercised "executive power"). It found the FTC cannot "be characterized as an [Executive Branch] arm" and "must be free from executive control[,]" stressing the "fundamental necessity" to maintain each government branch "entirely free" from direct or indirect coercion or influence of the others. *Id.* (President should have no "coercive influence" over an independent commission "wholly disconnected" from the Executive Branch).

[17]It doesn't matter if the Supreme Court's analysis of the then-FTC is right; what matters is how the *Humphrey's Executor* court saw and defined the situation, as that dictates the outcome here.

The multi-pronged *Humphrey's Executor* exception therefore does not apply to the NLRB, an agency which wields substantial executive power. What does apply? The over two-centuries-old rule from the First Congress and the long-standing 1926 Supreme Court precedent with its "core holding" in *Myers* that "the President has 'unrestrictable power . . . to remove purely executive officers.'" *See Seila Law*, 591 U.S. at 217, citing *Myers*, 295 U.S. at 632 (stating concept); *see generally Arthrex*, 141 S. Ct. at 1979-81 (principal and inferior officers). The NLRB Board Members carry out the President's Executive Powers, but statutorily, the President's removal power is restricted. 29 U.S.C. § 153(a) (significant restrictions). This contravenes the Constitution, establishing Plaintiffs' likelihood of success on the merits.

Plaintiffs' requested result respects the Constitution, its brilliant separation-of-powers balance, and Supreme Court precedent. In *Humphrey's Executor*, the Supreme Court characterized the then-FTC as legislative and judicial without any Executive Power. As such, removal protection respected the three government branches (*i.e.*, the President should not interfere with the other branches). That situation is wholly different than here, where the Officers wield substantial Executive Power and are, by definition, part of the Executive Branch. Unrestricted Presidential removal rights are necessary to respect and preserve the Constitution.[18]

## 2.    The Unconstitutional ALJ

Defendants admit NLRB ALJs are officers appointed but not removable by the Board. Instead, the unconstitutional Board (with removal protection) must start a removal action that has

---

[18]Defendants argue the substantial power requirement makes "no sense" because *Seila Law* noted an alternative Congressional response converting an agency head to a multi-member board. But that is pure *dicta*, lacking in any analysis, and it does not dilute the Court's clear multi-part requirement. Defendants misrely on *Consumer Research*, because the Fifth Circuit ignored *Seila Law*'s declaration the *Humphrey's Executor* exception is "one for multimember expert agencies" not wielding "substantial executive power." *Seila Law*, 591 U.S. at 218-19. *Seila Law* established *Humphrey's Executor* does not stand for the proposition a multi-member board—on that basis alone—is unequivocally entitled to removal protection. 591 U.S. at 216-19. Defendants cannot seriously contend everything is constitutional if done by a "group," regardless of the power being executed. And, if the Court finds the single requirement (*i.e.*, multiple body only) alone is constitutional, Plaintiffs reserve their right to contend otherwise. As *Humphrey's Executor* noted, much is implied in the separation of powers recognizing coequal government branches. 295 U.S. at 630 (citations omitted) (being a master in one house precludes controlling another's house).

two more removal layers, specifically: (1) removable only "for good cause established and determined by the" MSPB, "on the record and after opportunity for hearing," with (2) MSPB Members removable only for "inefficiency, neglect of duty, or malfeasance in office." Defendants state their ALJs are "not the type of inferior officers . . . with such significant policymaking or prosecutorial responsibilities" warranting unrestricted Presidential removal. That is not the operative test.[19] Defendants inaccurately changed the Supreme Court test *ignoring* the "limited duties" phrase and changing "no" to "*significant,*" and "policymaking or administrative authority" to "policymaking or *prosecutorial responsibilities*." As *Seila Law* noted, this second exception involves someone with "limited duties and no policymaking or administrative authority*." Seila Law*, 591 U.S. at 21 (citation omitted). Otherwise stated, the exception applies to a person with few duties and zero Executive (policymaking or administrative) Power. Not the NLRB ALJs.

Here, the NLRB ALJs fail the Supreme Court's test in all respects. ALJs have far broader duties, exercising authority not unlike a federal judge, *Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237, 242 (2018), which is a level of responsibility much greater than the narrow class of inferior officers some courts have shielded. Through their decisions, ALJs wield substantial policymaking authority, determining "on a case-by-case basis, the policy of [the] executive branch agency," and filling statutory and regulatory gaps with their "own policy judgments." *See Sec'y of Educ. Review of ALJ Decisions*, 15 Op. O.L.C. 8, 14-15 (1991) (same concept). They have administrative authority to enforce the laws through their procedures and executive power, *e.g.*, issuing subpoenas. *See, e.g., Collins*, 594 U.S. at 254 (holding subpoena power is a "clear[] executive power"). They also issue orders on ULP charges, which can include monetary penalties and which may follow the General Counsel's edict to seek "full make-whole" compensatory damages.

---

[19]Defendants' citations to a 1886 case and later cases (claiming Congress has the "power to regulate the conditions" for inferior-officer removal) are not instructive. For permissible removal restrictions, the person must have limited (as in few) duties and no (as in zero) policymaking or administrative authority. *See Seila Law*, 591 U.S. at 218 (defining rare exception). In other words, the person must be performing purely ministerial duties for another who is removable at will. Realistically, under Art. II, all officers by definition must ultimately be removable at will.

1    To escape the above, Defendants mischaracterize their ALJs as independent adjudicators,

2   but that framing actually renders their mere existence unconstitutional, because the courts enjoy

3   exclusive judicial power under Article III. *See United States v. Nixon*, 418 U.S. 683, 704 (1974)

4   (cannot share Judicial power with Executive Branch or Presidential veto or Congressional

5   veto-override power with Judiciary). As Executive Branch officers, through their work, NLRB

6   ALJs exercise Executive Power (and a fair amount) emanating only from the President.[20]

7    Supreme Court guidance alone resolves the relevant inquiry here. Axiomatically, under

8   the Constitution, "[t]he entire 'executive Power' belongs to the President alone," *Seila Law*, 591

9   U.S. at 213, "including the power of appointment and removal of executive officers," *Myers*, 272

10   U.S. at 164. This structural feature ensures "[t]he buck stops with the President," *Free Enter.*

11   *Fund*, 561 U.S. at 493, who "bears responsibility" for department and agency actions within the

12   Executive Branch. *Trump*, 603 U.S. at 607. The inferior vs. principal officer distinction is relevant

13   only for the Appointments Clause—whether through Senate advice-and-consent or appointment

14   by other means such as removal through an alter ego, the President always retains "unrestricted

15   power of removal" over all Executive Branch officers. *Id.* at 2328 (quoting *Myers*, 272 U.S. at

16   106, 176). As Madison said in the First Congress, "if any power whatsoever is in its nature

17   Executive, it is the power of appointing, overseeing, and controlling those who execute the laws.'

18   *Free Enter. Fund*, 561 U.S. at 492 (citation omitted). Given the President's "selection of

19   administrative officers is essential to" his execution of the law, so must his removal power be

20   over "those for whom he [cannot] continue to be responsible." *Myers*, 272 U.S. at 117. More

21   broadly, unrestricted Presidential removal power is "essential" so Executive Branch actions have

22   a "degree of electoral accountability." *Collins*, 594 U.S. at 252; *Fleming v. United States Dep't*

23   *of Agric.*, 987 F.3d 1093, 1114 (D.C. Cir. 2021) (Rao, J., concurring and dissenting in part)

24   (President has plenary removal power); *PHH Corp. v. Consumer Fin. Prot. Bureau*, 881 F.3d 75,

25

26   [20]The NLRA is significantly enforced through ULP charges decided in agency hearings handled by ALJs and affirmed by the Board. Yet, Defendants would have this Court conclude the ALJs are not crucial to Presidential enforcement of the law pursuant to his Executive Power, particularly where neither the ALJs nor the Board are subject to unrestricted Presidential control.

27

28

168 (D.C. Cir. 2018) (Kavanaugh, J., dissenting) (First Congress confirmed executive officer at-will removal); *State v. Su*, 121 F.4th 1, 19 (9th Cir. 2024) (Nelson, J., concurring) ("a unitary executive is entrenched in our constitutional structure"). Consistent with historical practice and Article II's text, as the Supreme Court advised, Presidential removal power extends to even "the lowest officers." *Collins*, 594 U.S. at 252. At the very least, the officer must be removable at-will by the President or by an at-will principal officer, *i.e.,* someone appointed directly by the President (with Senate advice and consent) who is responsible for directing and supervising officers, such as ALJs. *Arthrex*, 141 S. Ct. at 1980 (citation omitted).

Defendants attempt to create a *novel* exception essentially arguing the Constitution only requires at-will removal for officers with unlimited duties and significant policymaking or prosecutorial responsibilities. But the controlling *Collins* and *Seila Law* decisions support no such distinction. "At-will removal" applies to "the lowest officers, the middle grade, and the highest." *Collins*, 594 U.S. at 252; *Seila Law*, 591 U.S. at 213 ("lesser officers must remain accountable to the President, whose authority they wield"). Only low-level employees with severe limitations on their work (limited duties and no policymaking or administrative Executive authority) remain isolated from unrestricted removal. *Seila Law*, 591 U.S. at 218; *see also Free Enter.*, 561 U.S. at 506 (open question "whether lesser functionaries subordinate to officers" such as "civil servants" in independent agencies must be removable at will). NLRB ALJs are officers (as Defendants concede), and definitionally and actually, they have sufficient authority in the agency to require complete Presidential control, or, at minimum, removal by a principal officer removable by the President. In sum, ALJs must have a direct line of accountability to the President. *See Collins*, 594 U.S. at 252 (electoral accountability); *see also Lucia*, 585 U.S. at 248-51 (SEC ALJs officers).

Defendants' reliance on *Decker Coal Co. v. Pehringer*, 8 F.4th 1123 (9th Cir. 2021),[21] is misguided. It is wholly distinguishable. There, only retrospective (not prospective) relief was sought and the ALJs had a line of *electoral accountability* to the President. The Secretary of Labor

---

[21]Reliance on other decisions from various jurisdictions is also misplaced. *See, e.g.*, n.25, below.

1  (SOL), whom the President could remove at will, ratified the ALJ appointment before the ALJ
2  took real action (unlike NLRB ALJs who are not appointed or ratified by any officer removable
3  at will). Further, there, the Benefits Review Board members (BRB), who hear appeals and rule
4  on ALJ decisions, were appointed and removable by the SOL. Thus, the Ninth Circuit found the
5  President could control the ALJ outcome through the SOL, because the SOL was removable at
6  will and the President could control and remove BRB members through his SOL "alter ego." *Id.*
7  at 1135, *citing Myers*, 272 U.S at 133. *Effectively*, the President had unfettered power, albeit
8  through a few hoops.[22] The President could also order the agency to forego using an ALJ and to
9  instead use individuals lacking in removal protections. *Decker Coal*, 8 F.4th at 1134. The ALJ
10  removal restriction was therefore constitutional, as the court explained, "for reasons *specific to
11  the statutory scheme at issue*." *Id.* at 1126 (emphasis added).

12       In sharp contrast, NLRB ALJs must be used and the President cannot touch them because
13  the structure imposes multiple for-cause removal restrictions, none of which ultimately gives the
14  President limitless removal. Otherwise stated, the President has no way to remove the NLRB
15  Board members, ALJs, or the MSPB at his will. This critical constitutional defect not only
16  impedes but quite literally *prevents* the President from fulfilling his duty to faithfully execute the
17  Laws. U.S. Const. Art. II, § 3. Like in *Free Enter. Fund*, the applicable law here "not only protects
18  [ALJs] from removal except for good cause, but it withdraws from the President any decision on
19  whether that good cause exists" instead vesting that decision in another body [here, the MSPB[23]].
20  *Free Enter. Fund*, 561 U.S. at 495-96 (discussing similar ALJ infirmity). The NLRB operated
21  without the present multi-layer problematic structure for more than 40 years (until 1978).[24] An

---

22  [22]The Ninth Circuit found DOL ALJs were judges whose decisions could be vacated by "people
23  without tenure protection." *Decker Coal*, 8 F.4th at 1135. This structure allowed the President "to
     execute the laws—by holding his subordinates accountable[.]." *Id.* (citation omitted) (BRB had
24  ample control over ALJs, and President, in turn, had direct control over the board through SOL).
25  [23]MSPB members also enjoy removal protection. 5 U.S.C. § 1202(d).
     [24]The Civil Service Reform Act: (a) provided ALJ removal by the MSPB only for good cause, 5
26  U.S.C. § 7521(a); and (b) replaced the Civil Service Commission (with members removable at
27  will, 5 U.S.C. § 632 (1946)) with the MSPB, whose members have tenure akin to federal judges.
     Hearings on H.R. 11280 Before H. Comm. on Post Off. & Civ. Serv., 95th Cong. 824 (1978).

28

14

1   agency structure with novel executive-authority restrictions lacking in "historical precedent"

2   portends "the severe constitutional problem." *Id.*, 561 U.S. at 505 (discussing concept).

3       Defendants downplay the MSPB's role, erroneously claiming it "makes no policy

4   judgment" on ALJ removal. But that rewrites 5 U.S.C. § 7521(a), which unambiguously provides

5   the MSPB establishes and determines "good cause." Thus, the MSPB necessarily makes

6   discretionary policy judgments regarding AJL removal. *See Loper Bright Enter. v. Raimondo*,

7   144 S. Ct. 224, 2263 (2024) (statutes effectively delegate "discretionary authority" when

8   authorizing agencies define a statutory term). Because such an additional "level of tenure

9   protection changes the nature of the President's review," *Free Enter. Fund*, 561 U.S. at 496,

10  Plaintiffs are likely to succeed on the removal claim under Supreme Court law and also within

11  the contours of *Decker Coal* (and its progeny),[25] as unlike the appointment and removal structure

12  in *Decker Coal*, here the President lacks any ability "to oversee" NLRB ALJs or even to "attribute

13  [their] failings to those whom he can oversee," and therefore "the President is no longer the judge

14  of the [ALJs'] conduct." *See Free Enter.*, 561 U.S. at 495-96 (discussing constitutional infirmity).

15      Defendants mistakenly rely on *Leachco, Inc. v. Consumer Product Safety Comm'n*, 103

16  F.4th 748 (10th Cir. 2024), ignoring it precedes the Supreme Court's imprimatur of the Fifth

17  Circuit's *Jarkesy* decision.[26] The Supreme Court had every opportunity to reverse the Fifth

18  Circuit, but it declined to do so. *See Jarkesy*, 603 U.S. at 140–41 (did "not reach the remaining

---

[25]To the extent this Court reads Ninth Circuit authority [ECF No. 20, pp. 28-35] to compel a finding the removal protections here are constitutional, such authority should be overruled, and this Court should note it is duty-bound to follow erroneous Ninth Circuit law despite agreeing with Plaintiffs' position. Moreover, *Rabadi v. US DEA*, 122 F.4th 371 (9th Cir. 2024), is inapposite as the President could remove the officers who appointed the DEA ALJs; *Morrison v. Olson*, 487 US. 654 (1988), a *sui generis* decision, also involved peculiar, irrelevant circumstances having to do with the appointment of a single independent counsel under a now-defunct statute. *Morrison* is "more often cited for Justice Scalia's dissent," which more closely mirrors current jurisprudence. *Decker Coal*, 8 F.4th at 1131. Defendants' out-of-circuit cases (*e.g.*, *Alivio Med. Ctr. v. NLRB*, No. 24-cv-7217, 2024 WL 4188068 (N.D. Ill. Sept. 13, 2024); *Yapp USA Auto. Sys., Inc. v. NLRB*, No. 24-12173, 2024 WL 4119058 (E.D. Mich. Sept. 9, 2024)) suffer from the same misreading of removal power and of law or trends stated in recent Supreme Court opinions.

[26]The Commission in *Leachco* is not like the NLRB.

15

1   constitutional issues;" affirmed Fifth Circuit). Following that, district courts in that circuit have

2   recognized the *Jarkesy* removal protections are "nearly identical" to those in the NLRA. *See,* e.g.,

3   *Energy Transfer, LP v. Nat'l Lab. Rels. Bd.*, No. 3:24-CV-198, 2024 WL 3571494, at *2 (S.D.

4   Tex. July 29, 2024) (NLRB ALJ protections indistinguishable from SEC ALJ protections).

5   Therefore, these decisions should carry the greatest weight and should be considered as persuasive

6   authority, because they cogently distinguished contrary nonbinding authority and applied

7   Supreme Court precedent to correctly find the NLRB ALJ removal protections unconstitutional.

8   *See id.* at *3; *SpaceX v. Nat'l Lab. Rels. Bd.*, No. W-24-CV-00203-ADA, 2024 WL 3512082, at

9   *4 (W.D. Tex. July 23, 2024) (NLRB members "unconstitutionally protected from removal").

10          **3.      The Unconstitutional Violation Of The Fifth Amendment**

11          Regarding the Fifth Amendment claim, Defendants first raise an unwarranted subject-

12   matter objection, contending this Court lacks jurisdiction absent the three-part inquiry in *Axon*

13   (the *Thunder Basin* factors) being satisfied. Despite those questions, *Axon* stands for the premise

14   that an "ordinary statutory review scheme" does not preclude district court consideration of

15   "extraordinary [constitutional] claims." 598 U.S. at 180. The Court's repeated reference to the

16   simplicity of the "30,000-foot view" demonstrates certain constitutional challenges (as here) are

17   so basic and empirical that no other inquiry is necessary. *Id.* at 189.[27] With constitutional

18   challenges so "fundamental" and "even existential" that they assert the currently-structured

19   agencies are unconstitutional, *id.* at 180, the district court has jurisdiction. 28 U.S.C. § 1331.

20          *Axon* considered two cases where the FTC and SEC plaintiffs claimed the respective ALJs

21   were "insufficiently accountable to the President," violating the separation of powers; the FTC

22   plaintiff also attacked combining prosecutorial and adjudicatory functions in one agency. *Axon,*

23   598 U.S. at 180. The *Axon* challenge was not to resolve the constitutional issues but to decide if

24   they could be heard. *Id*. Noting the sidestep of the statutory review scheme, the Court addressed

25   that Plaintiffs were seeking to stop the agency proceedings. *Id.* The "question presented" was

26   _____

27   [27]Support also stems from *Axon* because the claims were of the "same ilk" as *Free Enter. Funds,* and not like *Thunder Basin*, which was the basis of the three-part inquiry. 598 U.S. at 189.

28                                    16

1    whether jurisdiction exists to consider and resolve the constitutional challenges to each agency's

2    structure, and the Court held, the "answer is yes." *Id.* The same principles apply here.

3        Despite the ordinary statutory review scheme involving appellate-court review following

4    agency adjudication, like *Axon*, Plaintiffs here did not take that course and, rather, sued in district

5    court before any ALJ decision, seeking to *stop* the agency proceeding. *Id.* Even though the two

6    *Axon* matters differed descriptively, *Axon* said, "[W]hat they have in common is really all it is

7    necessary to know." *Id.* at 182. What was in common? As here, each suit "premised jurisdiction"

8    on "federal-question authority" and the district court's Section 1331 power over constitutional

9    claims. *Id.* Each suit asserted: "some fundamental aspect of the [agency's] structure violates the

10   Constitution;" the violation rendered the proceeding unlawful; and subjection to an "illegitimate

11   proceeding causes legal injury" regardless of the ALJ decision. *Id.* In both situations, the district

12   courts erroneously dismissed the cases on subject-matter grounds, with the Ninth Circuit

13   affirming the dismissal and the *en banc* Fifth Circuit reversing the dismissal finding the

14   constitutional challenge should not be "funnel[ed]" through the statutory review scheme. *Id.* at

15   184-85. The Supreme Court held the agency review schemes did "not displace district court

16   jurisdiction" over constitutional claims. *Id.* at 185. The same is true here.[28]

17       Although both *Axon* situations raise the same issues as here, such that *Axon's* district-court

18   jurisdiction likewise applies, the three-question inquiry (although not required) produces the same

19   result. The three questions are: (1) "[C]ould precluding district court jurisdiction 'foreclose all

20   meaningful judicial review' of the claim?"; (2) "[I]s the claim 'wholly collateral' to the statute's

21   review provisions?"; and (3) "[I]s the claim 'outside the agency's expertise'?" *Axon*, 598 U.S. at

22

---

23   [28]As *Axon* noted about *Free Enter.*, the "Article II challenges" would prevent the ALJs through
24   whom much agency work is done "from exercising any power, unless they lose their double-for-
     cause tenure protection." 598 U.S. at 189. The FTC Plaintiff's challenge to the combination-of-
25   functions claim likewise involves "the core of the [agency's] existence, given that" it houses "both
     prosecutorial and adjudicative activities." *Id.* The *Axon* challenges (like *Free Enter.*) were, as
26   here, not about any substantive agency decision but instead challenges to agency's "structure or
     very existence[;]" they alleged the agency is "wielding authority unconstitutionally in all or a
27   broad swath of its work." Thus, the Court essentially found *Axon* and *Free Enter.* to be the same.

28

184-85 (citations omitted). The answers are obvious.[29] <u>First</u>, robbing the district court of original jurisdiction over constitutional claims and relegating them to appellate-court review after the injury has been inflicted renders judicial review meaningless—it is too late. As *Axon* noted, the problem is the alleged-injury timing compared to review timing, as "being subjected" to "unconstitutional agency authority" in a "proceeding by an unaccountable ALJ" is "a here-and-now injury." *Axon*, 598 U.S. at 190-92 (citation omitted). The "rub" is that injury cannot be remedied after the proceeding ends and review begins. *Id.* Indeed, the appellate court "can do nothing: A proceeding that has already happened cannot be undone." *Id.* <u>Second</u>, Plaintiffs' constitutional claims are "wholly collateral" to the statutory-review provisions permitting review of a labor-related agency decision. As in *Axon*, "the collateralism factor" favors Plaintiffs because the challenge is to "the power to proceed at all" and not to action by the agency. *Id.* at 192-93. <u>Third</u>, constitutional claims are outside NLRB Board and the ALJs' expertise. On that issue, *Free Enter. Fund* is clear: "Claims that tenure protections violate Article II" raise constitutional law questions, "detached from" agency-policy considerations. *Id.* at 194 (citations omitted).[30]

Finally, "permit[ting] Congress to concentrate the roles of prosecutor, judge, and jury in the hands of the Executive Branch" is "the very opposite of the separation of powers that the Constitution demands." *Jarkesy*, 603 U.S. 109 at 140. The NLRB's comingling of investigative, prosecutorial, adjudicatory, policymaking, and enforcement functions within one agency—and, in reality, within the Board Members and ALJs all of whom enjoy removal protection—not only offends the separation of powers contemplated by the Constitution, but also, it violates due-process rights, including the right to an impartial adjudicator, such as an Article III judge. *See, e.g.*, *Greenway v. Schriro*, 653 F.3d at 790, 805 (9th Cir. 2011) (when right to have case tried by an impartial judge is compromised, "structural error . . . requires automatic reversal").

---

[29]Wasting time and resources, Defendants raise but never answer the three questions.
[30]Defendants argue the Board only issued 14 §10(j) authorizations, *i.e.*, a "tiny fraction" of its work. It is not the number of times the Constitution is violated but the abject ability to do so that raises the constitutional issue. As in *Axon*, Plaintiffs claim Defendants wield unconstitutional authority in "a broad swath of its work," 598 U.S. at 189, of which § 10(j) is only a part.#

Although current law may permit some combination of investigative and adjudicatory functions in one agency in certain circumstances not present here, an agency structure implicates the Due Process Clause when "even the probability of unfairness" exists. *In re Murchison*, 349 U.S. 133, 136 (1955). A man cannot be a judge in his own case nor try cases "where he has an interest in the outcome." *Id.* Indeed, "due process does not permit the same individual to issue the initial decision finding violations and ordering remedies," prosecute the case, "and then make the final agency decision that will receive only deferential judicial review." *Horne v. Polk*, 242 Ariz. 226, 228 (2017). But that unconstitutional structure precisely defines the NLRB proceedings. Further, notwithstanding Defendants' inaccurate characterization of the NLRB GC as "independent," the NLRA expressly provides she only acts "on behalf of the Board." 29 U.S.C. § 153(d). Likewise, the Board appoints ALJs and Regional Directors, and only it may review ALJ reports. 29 U.S.C. § 154. Thus, the ALJs "remain servants of the same master—the very agency tasked with prosecuting individuals." *See Jarkesy*, 603 U.S. at 142 (Gorsuch, J., concurring) (discussing concept). Plaintiffs have "likely" shown ALJ unconstitutionality.

### 4.    The Unconstitutional Violation Of Plaintiffs' Jury-Trial Rights

Defendants assert the Seventh Amendment claim (Count IV) "lack[s] any colorable support under controlling precedent." The Constitution and *Jarkesy* are not only "colorable" support but *controlling* legal authority. The Seventh Amendment provides a jury-trial for "Suits at common law[.]" Const., Seventh Amend. In 2024, the Supreme Court held it "embrace[s] all suits . . . not in equity or admiralty jurisdiction," whatever "peculiar" form they take. *Jarkesy*, 603 U.S. at 122 (citation omitted). Jury-trial rights exist for relief that is legal in nature or punitive (regardless of how denominated), even if equitable relief is also sought. *Id.* at 121-23 (compensatory money damages "prototypical" common-law remedy; jury-trial rights exist where money damages and penalties do not solely and remedially seek to restore status quo).[31]

---

[31]In *Int'l Union of Operating Eng'rs, Stationary Eng'rs v. NLRB*, No. 23-124, 2025 WL 251692, at *12 n.9 (9th Cir. Jan. 21, 2025), the court expressly "decline[d]" to rule on the jury-trial-rights issue because the employer never raised "the objection to the Board." Not so here: Plaintiffs raised this defense in their July 2024 Answer. Moreover, *Int'l Union* was purely a statutory interpretation

Defendants repeat their subject-matter jurisdiction argument regarding the Seventh Amendment, contending *Axon* has purported "jurisdictional requirements" (*i.e.*, the *Thunder Basin* three-question inquiry). But no ordinary statutory review scheme precludes district court consideration of constitutional claims. *Axon,* 598 U.S. at 180. The preceding detailed analysis similarly applies here, and the three-question inquiry (although unnecessary) produces the same result: First, the district court has Section 1331 jurisdiction over the Seventh Amendment claim, and appellate review after suffering the unconstitutional injury of not getting a jury-trial renders judicial review meaningless. *See Axon*, 598 U.S. at 190-92 (too late). Second, the constitutional claims are "wholly collateral" because Plaintiffs are challenging the agency's power to proceed at all to seek money and punitive damages before the agency. *Id.* at 192-94. Third, constitutional claims are outside the Board and ALJs' expertise. Thus, subject-matter jurisdiction exists.

Additionally, Defendants fundamentally ignore the bases for the Seventh Amendment claim. Defendants mistakenly rely on *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48 (1937), an old case merely noting the NLRA authorizes reinstatement and payment for lost time. 301 U.S. at 48-49. But this ignores *Jarkesy's* distinction about jury-trial rights existing for money and punitive damages that are legal in nature when they are "designed to punish or deter the wrongdoer" vs. restoring the status quo. *Jarkesy*, 603 U.S. at 111 (citation omitted). The NLRB GC has directed Regions to seek "make-whole" relief including "direct or foreseeable pecuniary harms," and Plaintiffs have shown Defendants are seeking broad and extraordinary legal and punitive relief. [ECF No. 13, p.14, 30-31 (itemizing relief sought)].[32] Otherwise stated,

_____

case. Only the dissent addressed the constitutional issue. *Id.* at *24-26 (Bumatay, J., dissenting) (explaining "the Board's imposition of foreseeable damages would implicate the Seventh Amendment" and that "the public rights exception doesn't justify the Board's broad . . . remedial powers"). Plaintiffs encourage this Court to follow Judge Bumatay's persuasive opinion.

[32]In both agency proceedings, the NLRB requests a plethora of "novel" legal and punitive remedies. [ECF No. 13, pp.14, 30-31] *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) ("[c]ompensatory damages" and "monetary relief for all losses" present the "classic form of legal relief"). Some remedies here are "designed to punish" and not to "restore the status quo." *See Jarkesy*, 603 U.S. at 124 (remedies legal or punitive in nature require a jury-trial). Moreover, the NLRB has refused to limit the "other relief" it may seek, which not only offends due-process, adequate-notice rights but also opens the door for the panoply of remedies the Board expressly

1    Defendants are not simply seeking status-quo relief as in *Jones & Laughlin*, but rather are seeking

2    extraordinary monetary and punitive damages relief (*e.g.*, costly publications, reimbursing unions

3    for unsuccessful organizing efforts, restoring long-closed operations, creating a preferential hiring

4    list for non-employees, etc.). Under these circumstances, the Constitution and *Jarkesy* ensure

5    Plaintiffs' jury-trial rights that are not available in the present proceedings.[33]

6         Finally, Defendants argue NLRB cases adjudicate public rights and agency proceedings

7    are not legal in nature. Neither argument holds weight. Defendants cannot credibly rely on *Jones

8    & Laughlin*, a case only addressing jury-trial rights in the "instant case" context where the only

9    relief was statutory relief. *Jones & Laughlin*, 301 U.S. at 48 (reasoning reinstatement and time-

10   lost rendered case "not a suit at common law"). Whatever relief may have been available in NLRB

11   proceedings 88 years ago bears no resemblance to the present-day high-stakes NLRB

12   proceedings, where the NLRB has granted itself the extra-statutory authority "to take draconian

13   steps to remedy the alleged [ULP] violations[.]" *Thryv, Inc. v. Nat'l Lab. Rels. Bd.*, 102 F.4th 727,

14   733 (5th Cir. 2024). Indeed, the NLRB now seeks recovery of "novel, consequential-damages-

15   like labor law remedies," *id.* at 737, which were not present in *Jones & Laughlin*.

16   **C.    Irreparable Harm**

17        Defendants inexplicably argue *Axon* has no bearing on irreparable harm. *Axon*

18   unequivocally instructed that the harm is the subjection to "unconstitutional agency authority"

19   and that it is "a here-and-now injury" which cannot be remedied by appellate review because the

20   damage is already done. *Axon*, 598 U.S. at 191 (citation omitted) ("Judicial review" of "structural

21

22   foretold in *Thryv*, 372 NLRB No. 22 at *9 (numerous monetary claims); *see also Stern v.
     Marshall*, 564 U.S. 462, 489 (2011) (one's liability to "another under the law" is a matter of
23   "private right").

24   [33]Defendants' requested relief exceeds reinstatement and employee compensation affirmed in
     *Int'l Union of Operating Eng'rs*, 2025 WL 251692, at *4 (effectively enhanced back pay). Rather
25   than narrowly-tailored remedies benefitting employees, the Board seeks uniquely *punitive* relief
     (*e.g.*, union-organizer payments, costly newspaper publications, etc.) that does not benefit
26   employees. These tort-like remedies are "remote from the unfair labor practice" and "nearly
     indistinguishable from punitive damages" only courts impose. *See Id.* at *24 (Bumatay, J.,
27   dissenting) (discussing constitutional impact of seeking such relief).

28
                                              21

1    constitutional claims" "too late to be meaningful"). The irreparable harm is having to face the

2    unconstitutional proceeding.[34] Defendants never deal with this *Axon* language except to say *Axon*

3    was only about subject-matter jurisdiction, a duplicitous distinction. Although *Axon* discussed

4    this language when answering the first *Thunder-Basin* question, this does not make the stated

5    irremediable-harm outcome any less persuasive. Never substantively rebutting this, Defendants

6    make a silent but fatal admission.

7         Defendants next argue against injunctive relief contending Plaintiffs could have sought

8    relief in April 2021.[35] Plaintiffs' timing makes every sense for reasons including that: (a) the

9    Supreme Court issued recent helpful guidance and even controlling law (such as *Axon* and

10   *Jarkesy*) on questions Plaintiffs raise; (b) Defendants have ramped up the agency proceedings

11   (*e.g.*, issuing numerous subpoenas, adding more charges *ad nauseum*, threatening to combine the

12   illegal proceedings, amending their complaints to seek extraordinary legal or punitive damages);

13   (c) in April 2024, the GC expanded her edict to seek "full make-whole remedies"; and (d) in 2024,

14   the Fifth Circuit described the new supposedly "make-whole" remedies as "a novel

15   consequential-damages like" remedy, *Thryv*, 102 F.4th at 737. In sum, Plaintiffs acted reasonably

16   waiting until Supreme Court precedent and other persuasive decisions green-lighted Plaintiffs'

17   claims. Additionally, as noted elsewhere, constitutional claims may always be raised.

18        Curiously, Defendants cite *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019),

19   but there the Ninth Circuit found the district court abused its discretion by holding delay precluded

20   an irreparable-harm finding. Defendants also never acknowledge the cases (many in the Ninth

21   Circuit) that reject delay arguments and even hold showing delay does not, "as a matter of law,"

22

---

23   [34]Raising a different injunction factor (when it is they criticize collapsing factors), Defendants
24   argue only First Amendment rights provide a basis for claiming irreparable harm, citing out-of-
     circuit caselaw about a harm presumption only for such rights. But the Fifth Amendment and
25   Seventh Amendment do not take a backseat to the First Amendment, and our government
     Defendants should not so argue. The Supreme Court has also never sanctioned such a limitation.
26   [35]Absent a clear waiver establishing relinquishment of the right to raise a constitutional challenge,
     the claim can be made any time. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (quotations
27   omitted) ("every reasonable presumption" indulged not to waive basic "constitutional rights").

28

preclude an irreparable-harm determination. *See e.g.*, *Hybritech Inc. v. Abbott Labs.,* 849 F.2d 1446, 1457 (Fed. Cir. 1988) (discussing delay); *Cuviello*, 944 F.3d at 833 (strong harm showing not required; constitutional injuries are of great importance); *Aguayo ex rel. N.L.R.B. v. Tomco Carburetor Co.* , 853 F.2d 744, 750 (9th Cir. 1988); (courts "loath to withhold" based solely on delay); *Oakland Tribune, Inc. v. Chronicle Publishing Co.,* 762 F.2d 1374, 1377 (9th Cir. 1985) (delay not alone determinative); *Arc of Cal. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014) (tardiness "not particularly probative" with "ongoing, worsening injuries"); *SI Handling Systems, Inc. v. Heisley,* 753 F.2d 1244, 1264 (3d Cir.1985) (relevant inquiry is danger of harm at time).[36]

Last, Defendants argue against injunctive relief because the Court can sever the unconstitutional provisions. As Defendants recognize, even their legal authority warns only "so long as the law can still function and remain operative." [ECF No. 20, p.47]. As *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 628 (2020) (citations omitted) instructed, "[b]efore severing a provision, the Court must ensure the rest of the law is "capable of functioning independently" and in a "fully operative" fashion. Even so, severability is not to be decided now, but rather at the permanent injunction and trial stage. *See SpaceX*, 2024 WL 3512082, at *5 (unnecessary to consider severance as it does not affect the likelihood of merits-success). Moreover and importantly, severability does not mean the injunction should be denied. Rather, the "formal remedy" is actually "an injunction, declaration, or damages." *Barr,* 591 at U.S. at 627, n.5.

Regardless, severability does not answer the relief to which Plaintiffs are entitled. As the Supreme Court said more than once, being subjected to an unconstitutional proceeding is the here-and-now injury, and there is no way to unring the bell. The proceedings to date are irreparably

---

[36]Defendants cite additional authority arguing, under *Axon*, irreparable harm is not proven solely from a constitutional violation, but that unfairly misreads *Axon*. Those cases also have no bearing in this Circuit, because *Baird*, 81 F.4th at 1042, found a likelihood of merits-success on a constitutional claim "sharply tilts" the irreparable-harm factor in the movant's favor. *See also Fight for Nev. v. Cegavske*, 460 F. Supp. 3d 1049, 1059 (D. Nev. 2020) (constitutional deprivation suffices to "establish irreparable injury"); *Coeur D'Alene Tribe v. Hammond*, 224 F. Supp. 2d 1264, 1267 (D. Idaho 2002) (if Constitution violated, harm presumed; remedy is injunction).

tainted and cannot be undone. So what has to happen? The present NLRB proceedings must be enjoined, the fruits of the poisonous-tree proceedings (*e.g.*, the testimony, the discovery, etc.) cannot be used, *see, e.g., Gelbard v. United States*, 408 U.S. 41, 50 (1972) (discussing concept in criminal setting), and Defendants cannot pursue non-equitable relief absent a jury-trial. Otherwise, Plaintiffs' injuries will continue.[37] No matter how the agency proceedings would ultimately unfold, Plaintiffs will continue to suffer increasing harm from an unconstitutional proceeding where they would be compelled to answer to an impermissible ALJ and Board that lack Presidential accountability. In short, Defendants cannot benefit from ill-gotten gains occasioned by the unlawful proceedings to date.

### D.    Balance Of Equities And Public Interest

Defendants address the last two injunction factors together, first citing Eighth Circuit and Ninth Circuit caselaw stating Congress declares the public interest when enacting law and, thus, the Court should "pay particular regard." Point missed: As Plaintiff's controlling legal authority repeatedly shows, the public's interest in protecting and upholding the Constitution trumps any other public interest. Defendants mistakenly rely on *Del. State Sportsmen's Assoc. v. Del. Dept. of Safety & Homeland Security*, 108 F.4th 194, 203 (3d Cir. 2024),[38] which is precluded by the Ninth Circuit's *Baird* decision declaring the merits-success factor as particularly important and

---

[37]Just as a party suffers irreparable harm "expend[ing] time and resources arbitrating a [non-arbitrable] issue" where "an award" would be unenforceable, Plaintiffs will suffer irreparable harm by defending allegations before an unconstitutional agency whose orders would be unenforceable. *See Morgan Keegan & Co. v. McPoland*, 829 F. Supp. 2d 1031, 1036 (W.D. Wash. 2011) (Circuit Court citation omitted). The concern is particularly acute where, as here, there is no mechanism to get "fees or costs if successful" on the constitutional claims and costs will continue, absent an injunction. *See Oppenheimer & Co., v. Mitchell*, C23-67 MJP, at *13-14 (W.D. Wash. Mar. 9, 2023) (irreparable harm spending unrecoverable resources in improper arbitration). The arbitration reasoning mirrors *Axon*: when a party challenges the forum's propriety or if the case should proceed at all, having to proceed with no ruling on the threshold issue precludes "meaningful" appellate review. *Axon*, 598 U.S. at 191. The same is true here.

[38]Defendants argue that, under *Del. State Sportsmen's Assoc.*, claiming the public interest is not served by an unconstitutional law "impermissibly collapses" the four injunctive factors into one, but that concept expressly came from the movant's admission, 108 F.4th at 202, and no such admission was made here. Regardless, *Baird*, 81 F.4th at 1044, controls in this Circuit.

1   noting a finding the plaintiff is likely to succeed "sharply tilts" the three remaining factors in the

2   movant's favor. *Baird*, 81 F.4th at 1044 (citations omitted); *see also Arizona Dream Act Coal. v.*

3   *Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) (likely constitutional violation confirms irreparable

4   harm and establishes last two factors).[39] Defendants seriously cannot argue Plaintiffs failed to

5   show likelihood of merits-success on at least one (if not every) constitutional claim, and under

6   *Baird*, that decidedly answers the inquiry.[40] Supreme Court precedent and even Ninth Circuit

7   guidance compel injunctive relief here, and Congress has the plenary ability to fix any offending

8   statute. Despite Defendants' policy arguments, this Court has a duty to bring ongoing

9   constitutional violations "to an immediate halt." *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020)

10  (quoting *Hutto*, 437 U.S. at 687, n.9).

11  **IV.    CONCLUSION**

12      The Constitution is a "superior, paramount law," and "a legislative act contrary to the

13  [C]onstitution is not law" at all. *Marbury v. Madison*, 1 Cranch 137, 177 (1803). Otherwise stated,

14  the Constitution reigns supreme. Plaintiffs demonstrated their right to injunctive relief under

15  controlling Supreme Court caselaw. Thus, this Court, as the constitutional protector, must *not*

16  allow our federal government, through these Defendants, to violate Plaintiffs' key constitutional

17  rights.

18      Dated this 24th day of January, 2025.

19

20                          FISHER & PHILLIPS LLP
                            /s/ David B. Dornak, Esq.
21                          DAVID B. DORNAK, ESQ.
                            300 South Fourth Street, Suite 1500
22                          Las Vegas, NV 89101
                            Attorneys for Plaintiffs

23

24  [39]*Del. State Sportsmen's Assoc.* rejected *Baird* as the Ninth Circuit's "siren[.]" 108 F.4th at 202.
    [40]Regardless, Plaintiffs established the factors. [ECF No. 13, pp. 46-48]. And, Defendants'
25  concern an injunction would be severe because the administrative procedures are the sole NLRA
    enforcement mechanism is no basis for allowing a constitutional violation to stand. *See Rodriguez*
26  *v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (citations omitted) (no harm from injunction
    merely addressing constitutional concern); *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir.
27  1983) (same).

28
                                        25

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I hereby certify that on this date, the foregoing **REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELINIARY INJUNCTION** was electronically filed with the U.S. District Court, and a copy was electronically transmitted from the Court to the email address on file for the following:

Paul A. Thomas, Esq.
Grace L. Pezzella, Esq.
National Labor Relations Board
1015 Half Street, SE
Washington, D.C. 20003
paul.thomas@nlrb.gov
grace.pezzella@nlrb.gov

Paul L. More, Esq.
Eric B. Myers, Esq.
Kimberly C. Weber, Esq.
McCracken, Stemerman & Holsberry, LLP
1630 S. Commerce Street, Suite A-1
Las Vegas, NV 89102
pmore@msh.law
ebm@msh.law
kcw@msh.law

Dated this 24th day of January, 2025.

_____/s/ Darhyl Kerr_____
An Employee of Fisher & Phillips, LLP

FP 53602661.1