UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RED ROCK RESORTS, INC., et al., | Case No. 2:24-cv-01966-ART-BNW |
| Plaintiffs, | **ORDER ON MOTION FOR PRELIMINARY INJUNCTION AND ASSOCIATED MOTIONS** |
| v. | |
| NATIONAL LABOR RELATIONS BOARD, et al.; | (ECF Nos. 12, 13, 28, 33, 36, 38, 49, 54) |
| Defendants, | |
| LOCAL JOINT EXECUTIVE BOARD OF LAS VEGAS, | |
| Intervenor. | |

Plaintiffs Red Rock Resorts and associated resort-casinos ("Plaintiffs") sued the National Labor Relations Board for declaratory and injunctive relief in administrative proceedings before Administrative Law Judges. Plaintiffs seek a preliminary injunction against the National Labor Relations Board, its General Counsel, and the presiding Administrative Law Judge ("Defendants") to halt these proceedings which they claim are unconstitutional. (ECF No. 13.) The National Labor Relations Board and Intervenor Union Local Joint Executive Board of Las Vegas ("the Union") oppose Plaintiffs' motion, arguing that this Court lacks jurisdiction over Plaintiffs' Seventh Amendment claim and lacks jurisdiction on this record to grant injunctive relief under the Norris-LaGuardia Act, 29 U.S.C. § 101 *et seq.*, which prohibits federal courts from granting injunctions in cases arising out of labor disputes unless the moving party shows an exception applies.

The Court holds that Plaintiffs' Seventh Amendment claim must be dismissed for lack of jurisdiction. The Court further holds with respect to Plaintiffs' remaining claims that because this case involves a labor dispute, the Norris-LaGuardia Act applies and bars injunctive relief here. Accordingly, the Court denies Plaintiffs' motion for a preliminary injunction.

1    **I.    BACKGROUND**

2    Plaintiffs seek to enjoin on constitutional grounds pending National Labor

3    Relations Board ("NLRB") proceedings. (ECF No. 13.) Those proceedings are

4    meant to resolve charges of unfair labor practices alleged by the Union. The Court

5    briefly summarizes the relevant functions of the NLRB before turning to the

6    pending proceedings involving Plaintiffs, Defendants, and the Union.

7    **A.    The NLRB Adjudicates Claims Involving Rights to Unionize.**

8    Congress established the NLRB through the National Labor Relations Act

9    ("NLRA"). 29 U.S.C. § 160. The stated policy of the NLRA is to protect workers'

10    "full freedom of association, self-organization, and designation of representatives

11    of their own choosing, for the purpose of negotiating the terms and conditions of

12    their employment or other mutual aid or protection." *Id.* § 151.

13    The only way unions, employees, or employers may enforce their rights

14    under the NLRA is through proceedings before the NLRB. *See id.* § 160(a), (b); *see*

15    *also Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. AFL-*

16    *CIO, Loc. 283 v. Scofield*, 382 U.S. 205, 221 n.18 (1965) ("since 1947," the NLRB

17    has served "substantially as an organ for adjudicating private disputes"). The

18    NLRB's adjudications begin when unions, workers, employers, or anyone else

19    files charges with the NLRB General Counsel. 29 U.S.C. § 153(d). If the General

20    Counsel finds that the charges have merit, that office issues a complaint against

21    the charged party. *Id.* § 160(b).

22    Following the complaint, the charged party has a hearing, generally before

23    an Administrative Law Judge ("ALJ"). 29 C.F.R. § 102.34. The ALJ's role is to

24    develop an administrative record, then issue a "proposed report, together with a

25    recommended order" to the NLRB. *Id.* § 160(c). Parties may then appeal the ALJ's

26    ruling to the NLRB, which has broad authority to modify or rewrite the ALJ's

27    decision. *See id.*; 29 C.F.R. § 102.46(a).

28    The NLRB itself has "[n]o power to enforce an order." *Myers v. Bethlehem*

2

*Shipbuilding Corp.*, 303 U.S. 41, 48 (1938). To enforce its orders, it must seek an injunction through the appropriate federal circuit court. *Id.*; 29 U.S.C. §§ 160(e), (h). The circuit court may then examine "all questions of constitutional right or statutory authority." *Myers*, 303 U.S. at 49 (citing *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 46, 47 (1937)). Until a circuit court affirms the order, "no penalty accrues for disobeying it." *Id.* at 48; *see also Mitchellace, Inc. v. NLRB*, 90 F.3d 1150, 1159 (6th Cir. 1996) ("An NLRB remedial order is not self-executing and the respondent can violate it with impunity until a court of appeals issues an order enforcing it.").

### B. Plaintiffs' Employees Organize for a Union.

In 2016 and 2017, hundreds of food and beverage workers at Plaintiffs' resort-casinos elected the Union to bargain on their behalf regarding their terms of employment. (*See* ECF No. 21 at 39; ECF No. 20 at 14.) Orders from ALJs and this Court required Plaintiffs to recognize the Union at other facilities. *See Overstreet v. NP Red Rock, LLC*, 2:20-cv-02351-GMN-VCF, 2021 WL 3064120 (D. Nev. Jul. 20, 2021), *motion for stay pending appeal denied*, 2021 WL 6773091 (D. Nev. Aug. 6, 2021), *aff'd*, 2021 WL 5542167 (9th Cir. Nov. 26, 2021), *vacated by stipulation*, 2024 WL 5688873; *In re: NP Red Rock LLC*, 373 N.L.R.B. No. 67 (June 17, 2024), *appeal docketed*, No. 24-1221 (D.C. Cir. Jun. 26, 2024).

The Union alleges that Plaintiffs undertook anti-Union campaigns using unfair labor practices, and these campaigns led to workers voting to decertify the Union at many of Plaintiffs' resort-casinos. (ECF No. 21 at 40–42.) The Union filed charges with the NLRB on those grounds. (*See* ECF No. 14.) The NLRB General Counsel brought the Union's charges to an ALJ. These are the proceedings that Plaintiffs seek to enjoin. (*See* ECF No. 13 at 17.)

### C. The NLRB Begins Resolving Unfair Labor Practice Charges Against Plaintiffs.

The ALJs overseeing the NLRB General Counsel's charges consolidated

1    them into two separate proceedings: Citywide I and Citywide II. NLRB Case 28-

2    CA-228052 et al. ("Citywide I"); NLRB Case 28-CA-276613 et al. ("Citywide II");

3    (ECF No. 21 at 42.)

4         In Citywide I, the NLRB General Counsel alleged that Plaintiffs illegally

5    infringed on their employees' right to organize. According to the charges, Plaintiffs

6    fired employees who had filed labor charges with the NLRB or testified in NLRB

7    proceedings. (ECF No. 14 at 95.) Managers told employees that the Union would

8    never reach a contract with Plaintiffs, that employees would lose their benefits if

9    they supported the Union, and that employees "would have to watch their

10   coworkers burn to the ground because they would not be able to help them if

11   they selected [the Union] as their collective-bargaining representative." (ECF No.

12   14 at 60, 63.) A management employee allegedly threatened laid-off employees

13   during the COVID-19 pandemic that Plaintiffs "would not consider for hire

14   applicants who previously worked for [Plaintiffs' casinos] and had a history of

15   supporting the Union." (*Id.* at 78.) Plaintiffs allegedly carried out that threat

16   against many employees who had supported the Union. (*Id.* at 90–91, 93.)

17        The Citywide I charges also allege that Plaintiffs treated more favorably

18   employees who opposed the Union. Allegedly, after one of Plaintiffs' employees

19   circulated a petition to decertify the Union, Plaintiffs named her "employee of the

20   year," gave her five days paid time off, a $2,500 cash award, and "a teardrop-

21   shaped art glass trophy," and posted her "name and image and a congratulatory

22   message on a billboard" outside the casino. (ECF No. 14 at 74–76, 80.) Plaintiffs

23   allegedly provided similar benefits to other employees who vocally opposed the

24   Union. (*Id.* at 81–82.)

25        In Citywide II, the NLRB General Counsel alleged that Plaintiffs engaged in

26   further unfair labor practices during and after the pandemic. Allegedly, Plaintiffs

27   strategically fired workers who had supported the Union and then engaged in

28   mass hiring of new workers, violating a Nevada law that required them to rehire

workers laid off due to the pandemic. (ECF No. 21 at 42; ECF No. 14 at 182.) Allegedly, Plaintiffs disciplined an employee because she had complained to the NLRB that a supervisor had sexually harassed her. (ECF No. 14 at 195–96, 219.) One of Plaintiffs' employees allegedly bragged about supervisors "giving him accolades for disciplining employees who supported [the Union] and participated in [NLRB] investigations." (*Id.* at 198.)

The consolidation orders in both proceedings detail several other examples of alleged unfair labor practices. (*See* ECF No. 14.) Both Citywide proceedings are ongoing. (*See* ECF No. 53 at 11.)

**D.    Plaintiffs Sue to Enjoin the NLRB's Proceedings.**

While the Citywide proceedings were ongoing, Plaintiff sued in this Court for declaratory and injunctive relief against NLRB members, the NLRB General Counsel, NLRB staff, and at least one ALJ based on allegedly unconstitutional removal protections, separation of powers violations, and violation of Plaintiffs' right to a jury trial. (ECF No. 1.)

Despite the Union's efforts since 2016—winning elections to represent several thousand workers in many of Plaintiffs' casino-resorts—the Union has since been decertified at all but one of Plaintiffs' casinos, and Plaintiffs have avoided ever entering collective bargaining with the Union. (ECF No. 21 at 42.)

**II.    PROCEDURAL HISTORY**

After filing suit, Plaintiffs moved for a preliminary injunction against the NLRB and ALJ to halt the proceedings pending resolution of their constitutional challenges. (ECF No. 13.) The NLRB responded on both the merits of Plaintiffs' motion for an injunction and on jurisdictional grounds. (ECF No. 20.) The Union also moved to intervene, with no opposition from Plaintiffs or Defendants, and its motion was granted by the Court. (ECF Nos. 19-1, 39). The Union has filed additional arguments and evidence in favor of denying Plaintiffs' motion. (ECF Nos. 21, 40.)

The judge previously assigned to this case held a hearing to confirm whether Plaintiffs wanted an evidentiary hearing on their preliminary injunction motion, which Plaintiffs declined, stating, "[T]his is a purely legal question. There is absolutely no need whatsoever for any witnesses." (ECF No. 53 at 5.)

## III.   STANDARD OF REVIEW

### A.   Jurisdiction

In matters of jurisdiction, federal courts possess "only that power authorized by Constitution and statute," "which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions." *Henderson ex rel. Henderson v. Shinseki,* 562 U.S. 428, 434 (2011). It is the burden of the party asserting jurisdiction to show that it applies. *Kokkonen*, 511 U.S. at 377. (citing *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 182–83 (1936)).

### B.   Preliminary Injunction

A preliminary injunction is an "extraordinary" and "drastic" remedy that requires the moving party to clearly show that they carry have carried their burden of persuasion. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (cleaned up). A movant seeking preliminary injunctive relief must show that they are likely to succeed on the merits, that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In cases against the government, the last two factors merge into one. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir.), *as amended* (Jan. 14, 2014).

While *Winter* requires a plaintiff to show likelihood of irreparable harm, the Ninth Circuit applies a sliding scale approach to the other factors. *All. for the Wild*

*Rockies v. Cottrell*, 632 F.3d 1127, 1134–35, 1139 (9th Cir. 2011). The Court may grant an injunction even if a party makes a lesser showing than likelihood of success on the merits, provided that the parties make strong showings on the remaining factors. *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (citing *Garcia v. Google Inc.*, 786 F.3d 733, 740 (9th Cir. 2015)).

## IV.    ANALYSIS

Plaintiffs seek preliminary injunctive relief for three constitutional claims. First, they argue that the NLRB's proceedings violate Plaintiffs' Seventh Amendment right to a jury trial. Second, they argue that the structure of the NLRB generally violates separation of powers, which they argue denies Plaintiffs due process in their adjudication. Third, they argue that NLRB ALJs and Board Members are unconstitutionally insulated from removal, and any proceedings before them are therefore illegitimate and must be halted.

The NLRB and the Union respond that this Court lacks subject-matter jurisdiction to hear Plaintiffs' Seventh Amendment claim. They also argue that this Court lacks jurisdiction to issue Plaintiffs' requested injunction because the Norris-LaGuardia Act ("NLGA") prohibits federal district courts from issuing injunctions in cases arising out of or involving labor disputes. To the extent the NLGA does not bar injunctive relief, the NLRB and the Union argue that Plaintiffs have not shown irreparable harm on their removability and separation-of-powers claims.

The Court holds that it lacks subject-matter jurisdiction over Plaintiffs' Seventh Amendment claim. It then holds that the NLGA prevents it from issuing an injunction because this case grows out of or involves a labor dispute, and Plaintiffs have not sought an injunction under the NLGA. For these reasons, the Court declines in the context of this motion to reach the merits of Plaintiffs' constitutional claims.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**A.    This Court Lacks Subject-Matter Jurisdiction to Hear Plaintiffs' Seventh Amendment Challenge.**

Plaintiffs argue that the General Counsel's intent to seek compensatory or consequential damages unconstitutionally violates their Seventh Amendment right to a jury trial under *SEC v. Jarkesy*, 603 U.S. 109, 122 (2024). They claim that the NLRA only authorizes the Board to remedy unfair labor practices through injunctive relief, not monetary remedies. The NLRB and the Union argue that this Court lacks subject-matter jurisdiction to hear this claim, applying *Axon Enters., Inc. v. FTC*, 598 U.S. 175 (2023). Like other courts that have considered this issue, the Court concludes that it lacks jurisdiction to hear this claim because it falls within the statutory review scheme of the NLRA. *See VHS Acquisition Subsidiary No. 7 v. NLRB* (*VHS Acquisition*), No. 1:24-CV-02577, 2024 WL 4817175 at *3–4 (D.D.C. Nov. 17, 2024), *appeal dismissed sub nom.*, No. 24-5270, 2024 WL 5232662 (D.C. Cir. Dec. 26, 2024); *Nexstar Media, Inc. Grp. v. NLRB*, 746 F.Supp.3d 464, 470–73 (N.D. Ohio 2024).

The issue here concerns whether this Court has jurisdiction to hear Plaintiffs' claim that the NLRB lacks statutory authority to potentially seek compensatory or consequential damages. The NLRA review scheme provides for review of a final NLRB order in the United States court of appeals. 29 U.S.C. § 160(f) ("Any person aggrieved by a final order of the Board ... may obtain a review of such order in any United States court of appeals . . . ."). This section further provides that a party aggrieved by a decision of the Board must make its case first to the agency and then to the court of appeals. *Id.* § 160(e) ("No objection that has not been urged before the Board . . . . shall be considered by the court . . ."); *see also Free Enter. Fund. v. Public Co. Accounting Oversight Bd.,* 561 U.S. 477, 489 (2010) (noting that statutory schemes for agency review "[g]enerally" are "exclusive"). The NLRA is similar to other statutory review schemes in which Congress, by specifying that judicial review is in the courts of appeals, implicitly

stripped jurisdiction from district courts to hear and adjudicate agency proceedings. *See Axon*, 598 U.S. at 185; *see Free Enter. Fund*, 561 U.S. at 489. The Supreme Court has recognized that in this kind of statutory review scheme, "[t]he agency . . .fills in for the district court, with the court of appeals providing judicial review." *Axon*, 598 U.S. at 185.

The Court in *Axon* articulated the test to determine when a district court has jurisdiction to hear a challenge to an agency action before the agency has made a final decision reviewable by a court of appeals. *VHS Acquisition*, 2024 WL 4817175 at *3–4 (citing *Axon*, 598 U.S. at 180 and *Bohon v. Fed. Energy Regul. Comm.*, 92 F.4th 1121, 1123 (D.C. Cir. 2024) (holding that the *Axon* test determines district court jurisdiction "before there [is] an agency order to challenge")). To make this determination, courts must weigh the three *Thunder Basin* factors: first, whether the statutory scheme forecloses all meaningful judicial review of the claim; second, whether the claim is wholly collateral to the statute's review provisions; and third, whether the claim is outside the agency's expertise. *Axon*, 598 U.S. at 186 (citing *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212–13 (1994)).

The courts that have applied this test to NLRB proceedings have found that all three *Thunder Basin* factors show that district courts lack jurisdiction to review such claims. *VHS Acquisition*, 2024 WL 4817175 at *3–4; *Nexstar Media, Inc. Grp,* 746 F.Supp.3d at 470–73; *see also Millennia Hous. Mgmt. v. HUD*, No. 1:24-CV-02084, 2025 WL 1222589 (N.D. Ohio Apr. 28, 2025) at *6–8 (applying similar analysis to adjudication by HUD ALJ). This Court weighs these factors in light of Plaintiffs' challenge.

The first *Thunder Basin* factor weighs against district court jurisdiction because the NLRA does not foreclose meaningful judicial review of Plaintiffs' Seventh Amendment claim. The NLRB's orders are not self-enforcing. *See Myers*, 303 U.S. at 48–49; 29 U.S.C. § 160(f). Instead, the NLRB must seek circuit court

approval to enforce its orders. Thus, Plaintiffs will have the opportunity to challenge any order seeking damages at the circuit court before being required to comply. *See e.g.*, *Thryv, Inc. v. NLRB*, 102 F.4th 727 (5th Cir. 2024) (declining to enforce part of NLRB's order). The NLRA provides Plaintiffs meaningful judicial review of any order that they claim exceeds the NLRB's statutory authority.

The second *Thunder Basin* factor also weighs against district court jurisdiction because Plaintiffs' Seventh Amendment claim is not collateral to the adjudication. A claim is wholly collateral when it challenges the agency's "power to proceed at all," instead of "how that power was wielded." *Axon*, 598 U.S. at 193. Plaintiffs' Seventh Amendment claim rests entirely on the possibility of the NLRB imposing certain penalties. (*See* ECF No. 27 at 28 (reiterating argument the NLRB lacks "power to proceed at all *to seek money and punitive damages*") (emphasis added).) Despite Plaintiffs' "attempt to frame these claims as structural . . . [they are] really an attack upon the potential remedy that the . . . ALJ might ultimately impose." *Millennia Hous. Mgmt.*, 2025 WL 1222589, at *7. Plaintiffs' Seventh Amendment argument is not collateral to proceedings that will consider what remedies, if any, to impose against Plaintiffs.

The third *Thunder Basin* factor also weighs against district court jurisdiction because Plaintiffs' Seventh Amendment claim is not outside of the NLRB's expertise. The NLRB has "broad discretionary power to devise remedies to effectuate the policies of the [NLRA]." *VHS Acquisition*, 2024 WL 4817175 at *4 (citing *Fibreboard Paper Prod. Corp. v. NLRB*, 379 U.S. 203, 216 (1964)) (internal formatting omitted). As the court in *VHS Acquisition* observed with respect to an identical challenge, Plaintiffs' claim is statutory, not constitutional, in nature because they argue that the NLRB lacks statutory authority to impose certain remedies, namely compensatory or consequential damages. *Id.* Further, even assuming this claim is characterized as a constitutional challenge, "the Supreme Court has sanctioned agency review of constitutional questions when they arise

in the context of a distinct enforcement action and do not challenge the ability of the agency to act *writ large*." *Id.* (quoting *Elgin v. Dep't of Treasury*, 567 U.S. 1, 23 (2012); *Thunder Basin*, 510 U.S. at 214–15). *Elgin* confirms that when Congress vests exclusive review in an agency, that includes constitutional challenges. 567 U.S. at 23. Accordingly, the NLRB is competent to resolve in the first instance its authority to impose certain financial penalties.

Accordingly, the *Thunder Basin* factors all weigh against this Court exercising jurisdiction over Plaintiffs' Seventh Amendment claim. This Court lacks jurisdiction to hear this claim, and, accordingly, dismisses it.

### B.    The Norris-LaGuardia Act Removes This Court's Jurisdiction to Issue Injunctions in Cases Involving Labor Disputes.

Plaintiffs argue that the Norris-LaGuardia Act ("NLGA") does not apply because this case does not arise out of or involve a labor dispute and does not strip district courts of their powers to issue injunctive relief here. The NLRB and the Union respond that the NLGA applies and bars injunctive relief in this case.

Beginning with the text, the NLGA generally bars injunctive relief, providing, "[n]o court of the United States . . . shall have jurisdiction to issue any . . . temporary or permanent injunction in a case involving or growing out of a labor dispute . . . nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter." 29 U.S.C. § 101.[1] As the statute explains, this broad prohibition on injunctive relief is to protect workers' ability to organize:

> [I]t is necessary that [workers] have full freedom of association, self-organization, and designation of representatives of [their] own choosing, to negotiate the terms and conditions of [their] employment, and that [workers] shall be free from the interference, restraint, or coercion of employers in the designation of such representatives or in self-organization

---

[1] Although there are exceptions to the rule barring injunctive relief, Plaintiffs do not argue that any of the exceptions apply. (ECF No. 13.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.

*Id.* § 102. The Ninth Circuit has stated, "Congress enacted the Norris–LaGuardia Act in 1932 to 'tak[e] the federal courts out of the labor injunction business.'" *Burlington N. Santa Fe Ry. Co. v. Int'l B'hood of Teamsters Local 174 (Local 174),* 203 F.3d 703, 707 (9th Cir. 2000) (en banc) (citing *Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Ass'n,* 457 U.S. 702, 712 (1982)).

### 1.    This Case Involves a Labor Dispute.

Plaintiffs argue that this case does not involve or grow out of a labor dispute because their claims are about the constitutionality of the NLRB, not specific labor practices, and the underlying proceedings are between it and NLRB, not between an employer or employees and a union. The Court rejects these arguments because the NLGA applies to labor disputes, the proceedings that Plaintiffs seek to enjoin clearly concern a labor dispute, and all of the parties in this case—the NLRB, Plaintiffs, and the Union—are participating in the underlying labor dispute.

The NLGA applies to all labor disputes, broadly defined. *Local 174,* 203 F.3d at 909. The statute non-exhaustively defines a labor dispute to include "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." 29 U.S.C. § 113(c). The Ninth Circuit has described the statutory definition of labor dispute as "extraordinarily broad." *Local 174,* 203 F.3d at 909 (citing *Camping Constr. Co. v. Dist. Council of Iron Workers,* 915 F.2d 1333, 1342 (9th Cir. 1990)). The Ninth Circuit has further stated that the Supreme Court's test for determining whether a particular controversy is a labor dispute is "[e]qually expansive." *Id.* "Simply, the employer-employee relationship [must be

12

at] the matrix of the controversy." *Id.* (citing *Jacksonville Bulk Terminals Inc.*, 457 U.S. at 712 (internal quotations and citations omitted). The NLGA applies where a claim "would not exist but for the underlying [labor dispute]." *Armco, Inc. v. United Steelworkers*, 280 F.3d 669, 679–80 (6th Cir. 2002); *United Steelworkers v. Bishop*, 598 F.2d 408, 414 (5th Cir. 1979).

While this case does involve constitutional questions about administrative agencies, it also involves a labor dispute between a union, employees, and an employer. The NLGA does not require "that *each* dispute relevant to the case be a labor dispute," as long as a labor dispute is at the matrix of the controversy. *Jacksonville Bulk Terminals, Inc.*, 457 U.S. at 711 (emphasis in original). This case revolves around the propriety of Citywide I and II, which concern employees' terms and conditions of employment and their right to associate with the Union at Plaintiffs' casino-resorts. Plaintiffs' claims would not exist but for the Union's unfair labor practice charges that led Plaintiffs to proceedings in front of the NLRB. The proceedings seek to resolve allegations of Plaintiffs threatening, firing, and refusing to re-hire employees who organized in favor of a union while giving preferential treatment to employees who vocally opposed the Union. Therefore, the matrix of the controversy is the underlying employment relationship.

The parties to this action—Plaintiffs, the NLRB, and the Union—reflect that it concerns a labor dispute. Plaintiffs argue that this case does not involve a labor dispute because it is between an employer, Plaintiffs, and an administrative agency, the NLRB. The NLGA applies non-exhaustively to cases that involve "any conflicting or competing interests in a 'labor dispute' of 'persons participating or interested.'" *Id.* § 113(a). It defines a "person participating or interested in a labor dispute" as someone who is (1) directly or indirectly interested in the industry, trade, or occupation and (2) being sued for injunctive relief. 29 U.S.C. § 113(b). The Union made clear—and Plaintiffs even stipulated—that the Union has a direct interest in this case and the underlying proceedings. (*See* ECF Nos. 19, 19-

1.) The NLGA also applies to actions by non-employees "interested in a labor dispute concerning 'terms and conditions of employment' in an industry or a plant or a place of business." *New Negro All. v. Sanitary Grocery Co.*, 303 U.S. 552, 562–63 (1938); *Local 174*, 203 F.3d at 710, *as amended* (Mar. 8, 2000) (discussing *New Negro Alliance's* continued viability). The NLRB's General Counsel brought the unfair labor practice charges, which show the NLRB's interest in the terms and conditions of employment at Plaintiffs' resort-casinos.

Because this case involves a labor dispute, the Court also rejects Plaintiffs' reliance on *Vanderbilt University v. NLRB*, 759 F.Supp.3d 812, 838 (M.D. Tenn. 2024). The district court in *Vanderbilt* held that the NLGA did not apply to the plaintiff's suit challenging NLRB regulations because "there have been no allegations against Vanderbilt for any sort of unfair labor practice." 759 F.Supp.3d at 841. The court in *Vanderbilt* distinguished *VHS Acquisition,* which it acknowledged did concern a labor dispute. *Id.* at 841 (citing *VHS Acquisition,* 2024 WL 4817175 at *1, *5). This case is like *VHS Acquisition*, not *Vanderbilt*, because the NLRB proceedings involve a labor dispute—specifically, allegations of unfair labor practices concerning the terms and conditions of employment at Plaintiffs' casino-resorts. Plaintiffs' supplemental citation to *Space Expl. Techs. Corp. v. NLRB* does not shift the Court's analysis for the same reasons. No. 24-50627, 2025 WL 2396748 at *5 (5th Cir. 2025). There, the Fifth Circuit also found that the employers' claim did not grow out of a labor dispute, placing the case outside of the NLGA. *Space Expl. Techs. Corp.* 2025 WL 2396748 at *5. Because this case concerns a labor dispute, the NLGA governs.

### 2.    The NLGA Bars Injunctive Relief.

Having found that the NLGA applies, any request for injunctive relief is governed by the statute, which generally prohibits injunctive relief for any labor dispute subject to limited exceptions that Plaintiffs have not argued. *See Camping Const. Co.*, 915 F.2d at 1341, 1344. While Plaintiffs maintain they are not seeking

injunctive relief under the statute, they argue that the NLGA's bar on injunctive relief is narrowly limited to the list of activities in Section 104, arguing, "Congress further limited the NLGA by enumerating specific acts barring injunctive relief. *See* 29 U.S.C. § 104(a)-(i) (listing barred conduct.)" (ECF 27 at 14 (also referencing *Vanderbilt*, 749 F.Supp.3d at 837-38).) Though styled as a literal reading of Section 104, this argument cannot be squared with the controlling precedent and a plain reading of the statute. *See Local 174*, 203 F.3d at 909; *Camping Const. Co.*, 915 F.2d at 1344. The Court rejects this narrow construction of the NLGA's bar to injunctive relief.

In construing the NLGA, the Court is guided by the plain meaning of the text interpreted within its specific context, not in isolation. *See Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022). "Even supposing that [a party's] theory were a textually permissible way to understand the statute, [courts] do not usually pick a conceivable-but-convoluted interpretation over the ordinary one." *Stanley v. City of Sanford, Fla.*, 606 U.S. ___, 2065-66 (2025). The surplusage canon also advises courts to presume "that each word that Congress uses is there for a reason." *Advoc. Health Care Network v. Stapleton*, 581 U.S. 468, 477 (2017).

Section 101 of the NLGA broadly prohibits district courts from granting injunctive relief. 29 U.S.C. § 101. Section 101 provides in relevant part:

> No court of the United States [...] shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter . . . .

*Id.* That general prohibition on injunctive relief is subject to statutory exceptions, specifically, Sections 107 and 109, which provide exceptional circumstances when a federal court can issue an injunction. *Id.* §§ 107, 109; *Camping Const. Co.*, 915 F.2d at 1341–42. Section 104 provides, however, that for certain activities injunctive relief is never available. 29 U.S.C. § 104(a)-(i). Section 104 provides in relevant part:

> No court of the United States shall have jurisdiction to issue any

15

restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts . . . .

*Id.* Section 104 lists several examples of conduct for which Congress entirely barred injunctive relief, including striking, becoming a member of a union, aiding a person who is striking, giving publicity to the existence of a labor dispute, and encouraging anyone to do any of the listed acts. *Id.* Read plainly, the NLGA provides that injunctive relief is generally prohibited (Section 101), subject to certain exceptions (e.g., Sections 107, 109), and never available for the activities listed in Section 104.

Courts have recognized that Section 104's strict prohibition on enjoining certain activities does not diminish the general prohibition against injunctive relief contained in Section 101. In *Camping Construction*, an employer argued, similar to Plaintiffs' argument here, that the NLGA should only prohibit injunctions related to employee concerted activities listed in Section 104. 915 F.2d at 1336, 1344. In rejecting that argument, the Ninth Circuit explained that Section 104 "sets forth a list of specific acts against which the federal courts may under no circumstances issue an injunction." *Id.* at 1341; *see also AT&T Broadband, LLC v. Int'l Bhd. of Elec. Workers*, 317 F.3d 758, 760 (7th Cir. 2003) (observing that Section 104 "does not say that the prohibition of [Section 101] is *limited to* the sorts of activities mentioned in [Section 104]") (emphasis in original). Instead, Section 104 "is designed . . . to shout 'We really mean it!' for activities at the core of union operations." *Id.*; *see also Marine Cooks & Stewards*, 362 U.S. at 366 n. 2 (1960) (holding that the NLGA generally prohibits injunctions against conduct not listed in Section 104).

In sum, Plaintiffs' Section 104 argument fails because the Court cannot pretend that Section 101's general ban on injunctive relief does not exist and instead construe Section 104 to allow (by not banning) injunctive relief here. That

construction would require this Court to ignore controlling case law and defy the traditional canons statutory interpretation, going beyond ordinary meaning and rendering Section 101 surplusage.

By declining to seek relief under Section 107, Plaintiffs have given up their only avenue for injunctive relief. (ECF Nos. 13, 53 at 5.) Section 107 provides for limited circumstances under which a district court can grant preliminary injunctive relief in a labor dispute, subject to rigid requirements.[2] 29 U.S.C. §§ 107-09; *see also VHS Acquisition*, 2024 WL 4817175 at *4 ("If a labor dispute is at play, the Court asks whether this is one of the few cases that can satisfy the rigid requirements for an injunction under the Act."); *Amazon.com Servs. LLC v. NLRB*, No. 2:24-cv-09564-SPG-MAA, 2025 WL 466262, at *3 (C.D. Cal. Feb. 5, 2025) (considering request for injunctive relief under § 107), *appeal docketed*, No. 25-886 (9th Cir. Feb. 11, 2025). To obtain such relief, the Court must make findings after an adversarial evidentiary hearing, which Plaintiffs declined here. 29 U.S.C. § 107; (ECF No. 53 at 5.). Section 107 also requires a finding that absent injunctive relief a "substantial and irreparable injury to complainant's property will follow." *Id.* § 107(b); s*ee Amazon*, 2025 WL 466262, at *5; *VHS Acquisition*, 2024 WL 4817175 at *5. Unlike in those cases, Plaintiffs did not seek alternative relief under the NLGA, instead arguing that it does not apply at all. (ECF No. 13.) Having concluded that the NLGA applies and broadly strips this Court of jurisdiction to grant injunctive relief here, the Court rejects Plaintiffs' argument in favor of injunctive relief.

### 3. Congress Lawfully Limited Lower Courts' Jurisdiction to Issue Injunctions in Cases Arising Out of Labor Disputes.

Plaintiffs argue that federal district courts may always issue injunctions based on constitutional claims, despite explicit jurisdiction-stripping statutes like

---

[2] Section 109 specifies additional procedural safeguards and a limitation on the substantive scope of any injunction ultimately issued. 29 U.S.C. § 109.

the NLGA. Plaintiffs' argument rests on the incorrect premise that the NLGA bars judicial review. The Court rejects Plaintiffs' arguments because the NLGA merely bars injunctive relief, not judicial review, and Congress's power to explicitly strip courts of certain remedies is well-settled. Here, that means that this Court has jurisdiction to decide Plaintiff's constitutional challenges but cannot order injunctive relief.

It is well-established that Congress can limit courts' jurisdiction, as it does in the NLGA. *See Lauf v. E.G. Shinner & Co.*, 303 U.S. 323, 329-30 (1938). In *Lauf,* the Supreme Court held that a district court injunction violated the NLGA because the court failed to make "findings which the [NLGA] makes prerequisites for the exercise of jurisdiction." *Id.* at 329. The Court plainly confirmed Congress's power to limit by statute the availability of injunctive relief, stating: "[t]here can be no question of the power of Congress thus to define and limit the jurisdiction of the inferior courts of the United States." 303 U.S. 323, 330 (1938)*; see also Lockerty v. Phillips*, 319 U.S. 182, 187 (1943) (internal citations omitted) ("Congressional power . . . includes the power of . . . withholding jurisdiction from [lower courts] in the exact degrees and character which to Congress may seem proper for the public good.").

The NLGA limits injunctive relief but does not bar judicial review. Statutes that prohibit district courts from issuing injunctions against allegedly unconstitutional agency actions are regularly upheld by the Supreme Court. *See Bob Jones Univ. v. Simon*, 416 U.S. 725, 749–50 (1974) (holding district court lacked jurisdiction to issue injunctive relief on constitutional challenges to "Anti-Injunction Act," 26 U.S.C. § 7421); *Garland v. Aleman Gonzalez,* 596 U.S. 543, 548–52 (2022) (affirming interpretation that statute strips lower courts of jurisdiction to issue class-wide injunctions on constitutional claims). Though Plaintiffs argue that a statute barring injunctions of "unconstitutional agency actions" "would also be unconstitutional" (ECF No. 27 at 13 n. 7), they provide

no citations to support this proposition which appears to conflict with well-established precedent.

Because the NLGA permits judicial review, Plaintiffs' reliance on *Staacke v. Sec'y of Labor*, 841 F.2d 278, 281 (9th Cir. 1988), is misplaced. *Staacke* concerned workers compensation claims under the Federal Employees Compensation Act ("FECA"). FECA provides that workers' compensation decisions under the Act are "not subject to review by . . . a court by mandamus or otherwise." *Id.* (citing 5 U.S.C. § 8128(b)). Although *Staacke* did not involve a constitutional claim, the court stated that "where [a] statutory provision absolutely bars judicial review . . . courts maintain jurisdiction to consider constitutional claims." *Id.* (citing *Rodrigues v. Donovan*, 769 F.2d 1344, 1348 (9th Cir. 1985)). *Staacke* concerns finality provisions that can be read "to take the 'extraordinary' step of foreclosing jurisdiction over constitutional claims." *See Rodrigues*, 769 F.2d at 1347–48 (collecting cases).

Unlike the FECA provision at issue in *Staacke*, the NLGA does not "absolutely bar" judicial review. The NLGA only limits this Court from issuing an injunction; it does not remove subject-matter jurisdiction to hear constitutional challenges. *See Camping Const. Co.*, 915 F.2d at 1348 (NLGA "conditions and delays the exercise of jurisdiction, but certainly does not destroy it"); *Amazon*, 2025 WL 466262, at *5 (contrasting subject-matter jurisdiction to hear claim and lack of jurisdiction to issue an injunction under NLGA); *see also Biden v. Texas,* 597 U.S. 785, 798 (2022) (provision stripping jurisdiction to issue injunctions does not diminish subject-matter jurisdiction of district courts). In cases like *Staacke*, the district court lacked jurisdiction to consider the plaintiff's claim for declaratory relief. *See* 841 F.2d at 280. Here by contrast, this Court retains jurisdiction under the NLGA to decide Plaintiffs' claim for declaratory relief. This point was made clear in *VHS Acquisition*, where the court explained that it lacked jurisdiction under the NLGA to grant injunctive relief, but had jurisdiction to

decide the plaintiff's claim for declaratory relief. *VHS Acquisition Subsidiary No. 7 v. NLRB*, 759 F.Supp.3d 88, 100 (D.D.C. 2024), *subsequent determination of VHS Acquisition Subsidiary No. 7 v. NLRB*, No, 1:24-cv-02577, 2024 WL 4817175.

Because the NLGA explicitly strips this Court's jurisdiction to grant injunctive relief, *Axon* does not apply. 598 U.S. at 175. Plaintiffs argue that *Axon* stands for the premise that "a statutory review scheme 'does not preclude' a district court's consideration of constitutional challenges to an agency's structure." (ECF No. 27 at 14 (citing *Axon*, 598 U.S. at 180, 182) (internal citations omitted).) *Axon* addressed a different statutory issue, namely, administrative review schemes that *implicitly* strip jurisdiction from a district court, which are different from the *explicit* jurisdiction-stripping provision at issue here. *Axon*, 598 U.S. at 185-86 (Congress may explicitly strip jurisdiction "in so many words that district court jurisdiction will yield"); *see also Bohon v. FERC*, 92 F.4th 1121, 1124 (D.C. Cir. 2024), *cert. denied,* 144 S. Ct. 2563 (2024) (*Axon* does not apply to "explicit jurisdiction stripping"). *Axon* does not apply in this case because Congress, through the NLGA, explicitly withdrew this Court's power to grant an injunction in a case arising out of a labor dispute, and "[w]hen Congress withholds jurisdiction, we must respect its choice." *Axon*, 598 U.S. at 217 (Gorsuch, J., concurring).

Finally, *Reuter v. Skipper* is inapplicable here. 4 F.3d 716, 720 (9th Cir. 1993), *as amended* (Oct. 7, 1993); (ECF No. 27 at 15.). In *Reuter*, the plaintiff employee sued to enjoin her employer from firing her and argued "that because her action is founded upon an alleged constitutional violation under [42 U.S.C. §] 1983, her case is not a 'labor dispute' within the meaning of Norris–LaGuardia." 4 F.3d at 719. The Ninth Circuit explicitly rejected this argument, noting that the firing was "directly related to the terms and conditions of her employment" and that under NLGA's broad definition, "this is a labor dispute." *Id.* The Ninth Circuit then fashioned an exception to the statute for Section 1983 claims because "[i]f

a constitutional right is violated in a labor dispute between a municipal government and its employee, the [§] 1983 claim will invariably be made by the employee." *Id.* at 720. This is not a Section 1983 claim; Plaintiffs are not employees; and *Reuter*'s exception does not apply. Further, *Reuter* acknowledges that constitutional claims can arise out of or involve a labor dispute. Accordingly, *Reuter* supports finding that this case involves a labor dispute.

In sum, this case arises out of or involves a labor dispute, the NLGA broadly prohibits injunctive relief, and Plaintiffs have declined to seek injunctive relief on the bases permitted under the NLGA. The NLGA applies and lawfully limits this Court's authority to grant injunctive relief. Because Plaintiffs have not argued that an exception permitting injunctive relief applies, this Court denies Plaintiffs' motion for a preliminary injunction for lack of jurisdiction. (ECF No. 13.)

## V.    CONCLUSION

IT IS ORDERED that Plaintiffs' Seventh Amendment claim is dismissed for lack of subject-matter jurisdiction.

IT IS FURTHER ORDERED that Plaintiffs' motion for preliminary injunctive relief is denied. (ECF No. 13.)

IT IS FURTHER ORDERED that Plaintiffs' motion to file excess pages in its motion for a preliminary injunction is granted. (ECF No. 12.)

IT IS FURTHER ORDERED that all parties' motions for leave to file supplemental authority regarding their motions and oppositions are granted. (ECF Nos. 28, 36, 49, 54.)

IT IS FURTHER ORDERED that the NLRB's and Union's motion to strike and motion for leave to file documents are granted. (ECF Nos. 33, 38.)

//

//

//

1    DATED THIS 30th day of September, 2025.

2

3

4    ANNE R. TRAUM
     UNITED STATES DISTRICT JUDGE
5